[No. 41572.    En Banc.    January 8, 1971.]

THE STATE OF WASHINGTON, *Petitioner*, v. RONALD L. FELIX, *Respondent*.*

*Charles O. Carroll* and *James E. Warme*, for petitioner.

*Richard M. Holt* (of *Cushman, Thomas & Holt*), for respondent.

*Reported in 479 P.2d 87.

*The Attorney General* and *John H. Keith, Assistant,* amicus curiae.

HALE, J.—Defendant was convicted in Redmond District Justice Court of driving a motor vehicle on November 25, 1969, while under the influence of intoxicating liquor. He questions whether Trooper John Williams, Washington State Patrol, was legally certified by the state toxicologist to testify as to his blood alcohol. Trooper Williams, who arrested defendant and gave him the breathalyzer test, had testified as to its results under a permit or certificate issued him by Dr. Ted A. Loomis of the University of Washington medical faculty.

Long before the events of this case, the Board of Regents of the University of Washington, June 1, 1955, in accordance with RCW 68.08.107, Laws of 1953, ch. 188, § 13, p. 405, had appointed Dr. Loomis as head of what was designated as the state toxicological laboratory.

That statute, RCW 68.08.107, reads in material part:

> There shall be established at the University of Washington Medical School a state toxicological laboratory under the direction of *a competent toxicologist* whose duty it will be to perform all necessary toxicologic procedures requested by all coroners and prosecuting attorneys.

(Italics ours.) Defendant contends that Dr. Loomis was not the state toxicologist as contemplated by the "implied consent" initiative approved in 1968, Laws of 1969, ch. 1, p. 1, effective December 5, 1968, which provided for certification by a state toxicologist—an enactment in effect on the date of the offense charged. The people, he says, did not in the initiative mean the head of the state toxicological laboratory but a different position entirely. The prosecution says that the state toxicologist was no more than a continuum of the same position with but a slightly different name.

Defendant on appeal to the superior court moved at pretrial to suppress the breathalyzer results on the grounds that (1) RCW 46.61.506(3) (initiative 242, the implied con-

sent law) required that operators of the breathalyzer testing device be certified as competent and qualified to administer the test by the state toxicologist; (2) on November 25, 1969, there was no public officer or official in existence duly entitled by law to perform the function or duties of state toxicologist; and that (3) therefore, Trooper Williams, for want of such a permit or certificate, was not competent to testify as to the results of the breathalyzer test. The superior court granted the motion and the state brought the matter here on petition for certiorari to review the order suppressing the breathalyzer evidence. The parties agree that:

Subsequent to the enactment of section 68.08.107 the Board of Regents of the University of Washington on June 1, 1955 appointed Dr. Ted A. Loomis to head the State Toxicological Laboratory established under that section. At that time Dr. Loomis assumed the title of State Toxicologist. Since 1955 Dr. Loomis has held the position as head of the State Toxicological Laboratory almost without interruption. During that time he has been called, justifiably or unjustifiably, the State Toxicologist.

Also, since assuming the position as head of the State Toxicological Laboratory Dr. Loomis has instructed members of the Washington State Patrol and others in the operation and maintenance of the breathalyzer.

Prior to December 5, 1968 the results of a breath analysis test to determine the amount of alcohol in a persons blood was admissible in a criminal prosecution where a proper foundation was laid. Dr. Loomis's instructions to law enforcement agencies prior to December 5, 1968 were undertaken as a part of his duties as head of the State Toxicological Laboratory and were designed to comply with the legal requirements necessary to introduce breath analysis tests into evidence.

Whether Trooper Williams was an expert and otherwise qualified to administer the test, and thus competent to testify as to its results, is not the issue. The question before us is whether Dr. Ted A. Loomis, designated as head of the state toxicological laboratory on June 1, 1955, by the University of Washington under the 1953 statute (RCW 68.08.107), establishing "a state toxicological laboratory

under the direction of a competent toxicologist" was to be deemed the qualified and acting state toxicologist, legally authorized to certify the witness.

Initiative 242, known as the "Implied Consent Law," RCW 46.61.506 (3), in effect at the time of defendant's arrest by Trooper Williams, reads in part:

> Chemical analysis of the person's blood or breath to be considered valid under the provisions of this section shall have been performed according to methods approved by the *state toxicologist* and by an individual possessing a valid permit issued by the *state toxicologist* for this purpose. The *state toxicologist* is directed to approve satisfactory techniques or methods, to supervise the examination of individuals to ascertain their qualifications and competence to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the *state toxicologist*.

(Italics ours.)

Dr. Loomis, according to the stipulated facts, was cognizant of this legislation and

> acting upon the belief that he was State Toxicologist referred to in the Initiative published rules governing the procedures and method of administering the breathalyzer test, regulations governing the courses of instruction for operators and maintenance technicians, and methods of testing and certifying individuals approved to operate the breathalyzer. Acting pursuant to RCW 34.04.030 (the Administrative Procedures Act) Dr. Loomis on December 5, 1968 filed emergency rules and regulations in the office of the code reviser. On the 24th of January, 1969, Dr. Loomis acting pursuant to RCW 34.04.040 filed permanent rules which are now found in WAC 48.12.010 and following. He also issued permits certifying to the qualifications of operators and technicians and signed his name as the State Toxicologist.

> Dr. Loomis was never appointed by the Governor nor anyone else as the official State Toxicologist, per se.

It should be noted parenthetically that subsequent to the events of this case, the legislature amended RCW 68.08.107, in effect reestablishing a state toxicological laboratory at the University of Washington Medical School under the direction of a state toxicologist, and prescribed that he be

appointed by the President of the University to a 1-year term.[1] We disagree with defendant's contention that this 1970 legislation amounts to a legislative declaration that the office of state toxicologist as referred to in initiative 242, RCW 46.61.506(3), did not exist and that Dr. Loomis could not, therefore, carry out its duties.

When, in 1953, the state legislature enacted RCW 68.08.107, it established for the first time "a state toxicological laboratory" under the direction of "a competent toxicologist." Appointed by the Board of Regents to head that same "state toxicological laboratory," Dr. Loomis, probably for want of an official designation, assumed the title of state toxicologist, and thereafter managed, directed and operated that laboratory under that title. Dr. Loomis was still the head of and directing and managing the state toxicological laboratory under the assumed title of state toxicologist 13 years later when the electors of this state in initiative 242, RCW 46.61.506(3), *supra,* referred to the office of state toxicologist enacting (1) that chemical analysis be performed according to methods approved by the *state toxicologist,* (2) by one having been issued a permit from the *state toxicologist,* (3) directing the *state toxicologist* to

---

[1] "There shall be established at the University of Washington Medical School a state toxicological laboratory under the direction of the *state toxicologist* whose duty it will be to perform all necessary toxicologic procedures requested by all coroners and prosecuting attorneys. Annually the president of the University of Washington shall appoint *a competent toxicologist* as *state toxicologist* who shall serve a one year term. The *state toxicologist* may be reappointed to as many additional one year terms as the president of the university in his discretion deems proper. The facilities of the police school of the Washington State College and the services of its professional staff shall be made available to the coroners and the prosecuting attorneys in their investigations under this chapter. This laboratory shall be deemed to be within the meaning of medical and biological research as defined in RCW 66.08.180, and funds for this purpose not to exceed twenty-five thousand dollars shall be provided for setting up such laboratory and an additional amount not to exceed one hundred thousand dollars per biennium may be provided for salaries and operations of said laboratory, and the funds so provided may take priority over disbursements of any other sums from said medical and biological research fund." (Italics ours.) RCW 68.08.107, as amended; Laws of 1970, Ex. Ses., ch. 24, § 1, p. 199.

supervise examinations of persons to be authorized to give the blood alcohol tests, and (4) providing that permits to conduct blood alcohol tests may be revoked or terminated at the discretion of the *state toxicologist.*

■ We think it was the people's legislative intention that whoever headed the state toxicological laboratory established and designated in RCW 68.08.107 and performed the duties and met the responsibilities of that position since 1953, held the office of state toxicologist, and that the duties and powers and responsibilities placed in the state toxicologist by initiative 242 (RCW 46.61.506(3)) applied to and vested in the very position then held by Dr. Ted A. Loomis.

■■ Where the language of a statute is unclear or becomes doubtful in meaning when read in pari materia with other statutes related to the same subject matter, courts are obliged to give it a construction that renders it purposeful and effective, and to avoid a futile and meaningless interpretation. *Davis v. Washington Toll Bridge Authority,* 57 Wn.2d 428, 357 P.2d 710 (1960). The main object of judicial interpretation is to ascertain and give effect to the *intention* of the legislature, or in this instance the people (*In re Bale,* 63 Wn.2d 83, 385 P.2d 545 (1963)), and in doing so resort is first had to the words, context and subject matter. *Martin v. Aleinikoff,* 63 Wn.2d 842, 389 P.2d 422 (1964). Ascertaining what the people intended to accomplish by enacting initiative 242 is, then, the main object of interpreting it. *Krystad v. Lau,* 65 Wn.2d 827, 400 P.2d 72 (1965); *DeGrief v. Seattle,* 50 Wn.2d 1, 297 P.2d 940 (1956). To do this, the court should avoid unlikely or absurd or strained consequences (*Alderwood Water Dist. v. Pope & Talbot, Inc.,* 62 Wn.2d 319, 382 P.2d 639 (1963)), and give the legislation a reading which makes it purposeful and effective. *O'Connell v. Conte,* 76 Wn.2d 280, 456 P.2d 317 (1969).

Through enactment of initiative 242, the people intended to allow the results of breathalyzer tests to be admitted in evidence under certain prescribed safeguards which included administration of the tests by qualified personnel. They intended, we think, to designate the state toxicologist,

or competent head of the state toxicological laboratory as one authorized and competent to train, test and qualify such personnel. At that time, Dr. Ted A. Loomis held the office and possessed the qualifications established by law and carried out the duties of what could reasonably be deemed the state toxicologist. Our research has shown that, at the time of the drafting and enactment of initiative 242, the head of the state toxicological laboratory, already established and in operation at the University of Washington Medical School (RCW 68.08.107), possessed not only the qualifications but had undertaken the duties of state toxicologist, and that the title of state toxicologist which he had assumed in discharging his duties as head of that laboratory were in fact the duties of a state toxicologist. No other office by that name or title was found in the statutes of this state; nowhere else in the statutes could we find a public officer or office which could be said even remotely to constitute the position of state toxicologist or head of a state toxicological laboratory. Trooper Williams had been and, at the time of arresting defendant, was properly certified and acting under the permit of the state toxicologist.

Accordingly, the cause is reversed with directions to receive the testimony of Trooper John Williams.

ALL CONCUR.