[No. 432-2.    Division Two.    December 29, 1971.]

MAURICE FRITTS, *Appellant,* v. THE DEPARTMENT OF MOTOR VEHICLES, OFFICE OF DRIVER SERVICES, *Respondent.*

234

Robert W. Garver (of Garver & Garver), for appellant.

Slade Gorton, Attorney General, John H. Keith and David R. Minikel, Assistants, for respondent.

PETRIE, C.J.—Appellant was charged with driving while under the influence of intoxicating liquor. He was found not guilty by a jury, but, because he had refused to submit to a breathalyzer test at the time of his arrest, the Department of Motor Vehicles revoked his driver's license. After a formal administrative hearing the department sustained the revocation which has been stayed pending the resolution of this appeal. After filing a petition in superior court to review the department's final order, the trial judge affirmed the administrative determination in a de novo hearing. This appeal followed therefrom.

The overall issue presented by this appeal is whether or not the Department of Motor Vehicles properly revoked appellant's driver's license. Such action is governed by RCW 46.20.308, which provides in part:

(1) Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent, subject to the provisions of RCW 46.61.506, to a chemical test or tests of his breath or blood for the purpose of determining the alcoholic content of his blood *if arrested for any offense* where, at the time of the arrest, *the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor.* . . . Such officer shall inform the person of his right to refuse the test, and of his right to have additional tests administered by any qualified person of his choosing as provided in RCW 46.61.506. The officer shall warn the driver that his privilege to drive will be revoked or denied if he refuses to submit to the test. Unless the person to be tested is

unconscious, the chemical test administered shall be of his breath only.

. . .

(3) *If, following his arrest, the person arrested refuses* upon the request of a law enforcement officer to submit to a chemical test of his breath, after being informed that his refusal will result in the revocation or denial of his privilege to drive, no test shall be given. The *department* of motor vehicles, upon the receipt of a sworn report of the law enforcement officer that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor and that the person had refused to submit to the test upon the request of the law enforcement officer after being informed that such refusal would result in the revocation or denial of his privilege to drive, *shall revoke his license* or permit to drive or any nonresident operating privilege.

(Italics ours.)

This statute mandates the Department of Motor Vehicles to revoke or deny the privilege to drive upon the happening of a series of events: (1) arrest for any offense; (2) existence of reasonable grounds by the arresting officer to believe that the arrested person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor; (3) request by a law enforcement officer to the person arrested to submit to a chemical test of his breath; (4) informing the person arrested of his right to refuse the test and of his right to have other tests administered by any qualified person of his choosing, but warning that his refusal to submit to chemical testing will result in revocation or denial of his privilege to drive even though no test be given; (5) receipt by the department of the statutorily necessary sworn report of the law enforcement officer.

In support of his petition to superior court to review the department's final order of revocation, and in support of his appeal to this court, the appellant raises three arguable issues in an attempt to substantiate his contention that

his license should not be revoked: (1) his arrest was unlawful, invalidating the arresting officer's right to request him to take the test; (2) there was not sufficient evidence to conclude that, at the time of his arrest, the arresting officer had reasonable grounds to believe he had been driving or was in actual physical control of a motor vehicle under the influence of intoxicating liquor; and (3) his acquittal on the charge of driving while intoxicated prevents the department from revoking his driver's license for his refusal to take a breathalyzer test.

The record discloses that on the night he was arrested appellant was traveling north on 15th Street in Washougal and turned east onto "B" Street. Officer Phillips, an off-duty police officer of the Washougal Police Department, had stopped his car at the intersection. As appellant's car made the turn and passed by him, Phillips recognized the appellant as the driver and noticed that he "was slumped over the wheel of his vehicle." Phillips then motioned to an approaching patrol car driven by Officer Hammock. He told Hammock he suspected the driver of the vehicle which had just passed him of being intoxicated and thought he should be checked out. Officer Hammock testified that after receiving Phillips' tip:

> I looked down the street, see the car pulled over to the curb, came on down the street pulled over to the curb, actually about 18th and "B". By this time I had started this way. I saw a subject get out of the car, and just as he got out I pulled in behind him.

Appellant then walked across the street to the liquor store, the engine of his vehicle still running. The store was closed. After trying the knob on the door he turned to leave and was met by Officer Hammock. Hammock stated he noticed a strong odor of alcohol about him and described his walk across the street as "staggering." Upon producing his driver's license he was asked to perform three sobriety tests, none of which were performed satisfactorily. Believing appellant to be under the influence of alcohol, Officer Hammock told him he was under arrest and read to him his

Miranda rights. The officer then requested him to take a breathalyzer test. Though he was twice informed of his rights under the implied consent law and the consequences of refusal, once in the patrol car at the scene of the arrest and again in front of the breathalyzer machine at the sheriff's office, appellant refused to submit to the test. Upon receipt of Officer Hammock's sworn statement complying with RCW 46.20.308, the Department of Motor Vehicles revoked appellant's driver's license.

■  Appellant's first contention is that his arrest was unlawful. There is no affirmative declaration in the statute that the arrest be lawful; the statute declaring simply "if arrested for any offense." However, we most emphatically agree with appellant, and the department acknowledges, that inherently in the statute is the requirement that the arrest be lawful. To hold otherwise would not only be inconsistent with the legislative purpose of the statute, but would also be unconscionable.

■  The appellant contends, initially, that the necessary standards to effect his arrest for a misdemeanor did not exist. In order to make an arrest for a misdemeanor without a warrant, the arresting officer must have probable cause to believe that an offense is being committed in his presence. *Tacoma v. Harris,* 73 Wn.2d 123, 436 P.2d 770 (1968). In *Harris,* the court reaffirmed the standard for probable cause previously asserted in *Sennett v. Zimmerman,* 50 Wn.2d 649, 651, 314 P.2d 414 (1957):

> "The probable cause which will justify arrest for a misdemeanor without a warrant must be a judgment based on personal knowledge acquired at the time through the senses, or inferences properly to be drawn from the testimony of the senses."

■  In analyzing this contention by the appellant, we must first note the distinction between the requirement that the driver be arrested and the requirement that the arresting officer have reasonable grounds to believe the driver had been operating a motor vehicle while intoxicated in order that the breathalyzer test may be requested.

RCW 46.20.308 provides a person operating a motor vehicle on the public highways of this state is deemed to have consented to a chemical test of his breath "if *arrested* for *any* offense where, at the time of the arrest, *the arresting officer has reasonable grounds to believe* the person had been driving or was in actual physical control of a motor vehicle . . ." while intoxicated. A determination that the officer had "reasonable grounds to believe" the person had been driving while intoxicated is not dependent on the arrest. While there may be certain observations an officer might make in determining whether he has probable cause to arrest a driver which might also support the reasonableness of his grounds to believe the driver was operating a motor vehicle while intoxicated, it should be noted RCW 46.20.308 (1) states the arrest may be for *any* offense. Appellant's arguments presuppose the arrest be for drunk driving. We cannot construe the statute to make the arresting officer's right to request a breathalyzer test dependent solely on the grounds justifying the arrest. Such construction would seriously impede the effectiveness intended to be afforded the implied consent provisions in dealing with the problem of the intoxicated motorist. *State v. Felix*, 78 Wn.2d 771, 479 P.2d 87 (1971). From our review of the record, we are satisfied that under the applicable standards, Officer Hammock had probable cause to effect the appellant's arrest when he encountered the appellant on the evening of December 4, 1969 in Washougal, Washington.

■ Secondarily, if we understand appellant's contention properly, he contends that his subsequent acquittal by a jury in the Superior Court for Clark County is conclusive evidence that no crime was committed and, accordingly, his arrest must have been unlawful. It is not necessary, in this case, for the department to have established that the appellant actually committed the misdemeanor for which he was arrested. If the circumstances are such as would cause a reasonable person to believe that a crime is being committed in his presence, then the arresting officer can be said to have probable cause to effect the arrest. A subsequent ac-

quittal cannot vitiate the lawfulness of the initial arrest. *Tacoma v. Harris, supra.*

■ In his next argument, appellant contends the evidence was insufficient to establish the arresting officer had reasonable grounds to believe he had been driving or was in actual physical control of a motor vehicle while intoxicated. From our review of the evidence presented at the trial we cannot agree. While the testimony of Officer Hammock that "I looked down the street, see the car pulled over to the curb . . ." is ambiguous and deficient in itself to prove appellant had been driving his vehicle, there is certainly adequate additional testimony to establish the arresting officer had reasonable grounds to believe appellant had been driving or, at least, had been in actual physical control of a motor vehicle. Officer Phillips identified appellant as the driver of the vehicle and noticed he was slumped over the wheel. Acting on this information, Officer Hammock visually located appellant's car down the street and proceeded after it. He watched appellant get out, leaving the engine running. Appellant was the only occupant of the vehicle. He staggered when he walked, smelled of alcohol and poorly performed three sobriety tests. Thereupon he was placed under arrest and requested to take the breathalyzer test.

The trial court found in its finding of fact 3:

At the time and place of petitioner's arrest, Officer Robert A. Hammock had reasonable grounds to believe that the petitioner had been driving a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor.

We cannot agree with appellant that there is not substantial evidence to support such a finding. RCW 46.20.308 does not require a determination that the person arrested "had been driving or was in actual physical control of a motor vehicle" in order to sustain the revocation of his license. It requires only a determination that the arresting officer at the time of the arrest had reasonable grounds to believe the driver had done so while under the influence of intoxicat-

ing liquor. There is substantial evidence to support a finding that the arresting officer had "reasonable grounds to believe" the appellant had been driving or was in actual physical control of a motor vehicle while intoxicated, measured by his information and observations of the circumstances surrounding the arrest. When findings are supported by substantial evidence we will not disturb them on appeal.

Finally, we are asked to hold that an acquittal on the charge of driving while intoxicated precludes the Department of Motor Vehicles from revoking a driver's license for his refusal to submit to a breathalyzer test. Appellant argues he should not be penalized for refusing the test when he was found innocent of the crime of driving while intoxicated.

■ Under RCW 46.20.308 a driver has the choice of either (1) submitting to the test and providing evidence of his sobriety, or lack thereof, or (2) refusing and thereby losing his license to drive for a period of 6 months. The implied consent provisions have withstood an attack on their constitutionality and have been determined to be a valid exercise of the state's police power. *State v. Moore,* 79 Wn.2d 51, 483 P.2d 630 (1971). As noted by the court in *Moore* at page 55:

> We think the legislature could reasonably assume that the public welfare and safety is substantially affected by all intoxicated drivers, and that the requirement of submission to chemical tests would significantly reduce the menace of the drunken driver.

Regardless of whether driving is a right or a privilege, the license revocation proceeding is not a criminal proceeding. The purpose of enacting RCW 46.20.308 was to protect the public, not to punish the licensee, though the threat of punishment may necessarily be intended to deter the drunken driver. The revocation of drivers' licenses for refusal to submit to the implied consent provisions of RCW 46.20.308 is a function of the Department of Motor Vehicles flowing from the police power of the state to regulate driv-

ing in the interest of the public welfare and safety. The proceeding to review that revocation is a civil administrative proceeding (*Connolly v. Department of Motor Vehicles*, 79 Wn.2d 500, 487 P.2d 1050 (1971)), entirely separate and distinct from the criminal charge for which the driver was arrested. The fact that in the criminal proceedings the driver was not proven beyond a reasonable doubt to have been driving while intoxicated has no bearing on a civil proceeding under RCW 46.20.308 to revoke his driver's license for refusal to submit to a chemical test of his breath. We find other jurisdictions in accord: *Prucha v. Department of Motor Vehicles*, 172 Neb. 415, 110 N.W.2d 75 (1961); *Marbut v. Motor Vehicle Dep't of Highway Comm'n*, 194 Kan. 620, 400 P.2d 982 (1965); *Severson v. Sueppel*, 260 Iowa 1169, 152 N.W.2d 281 (1967); *Blow v. Commissioner of Motor Vehicles*, 83 S.D. 628, 164 N.W.2d 351 (1969).

Indeed, the very value of the implied consent legislation is that the outcome of the criminal charges be of no consequence to the administrative proceeding on the license revocation. The intent of the people in passing Initiative 242, our implied consent law (now codified as RCW 46.20.092, 46.20.308, 46.20.311, 46.20.911 and 46.61.506), was to enact a law which would more effectively deal with the drunk driver. The implied consent provisions are an effort to reduce the hazard the drunk driver presents to the traveling public by providing law enforcement officers with an efficient means of gathering evidence for use in a criminal prosecution against him. *State v. Felix, supra, Connolly v. Department of Motor Vehicles, supra*. These measures have gained approval in a large majority of the states. *See State v. Moore, supra*.

■ Appellant's reasoning would permit a driver to refuse the breathalyzer test in the hope of defeating a later prosecution on a drunk driving charge by preventing law enforcement officers from obtaining what, perhaps, would be the most damaging evidence against him. We cannot lend appellant the benefit of such a construction. The result

would be complete frustration of the statute. As stated in *State v. Felix, supra* at 776:

> The main object of judicial interpretation is to ascertain and give effect to the intention of the legislature, or in this instance the people . . . , and in doing so resort is first had to the words, context and subject matter. . . . Ascertaining what the people intended to accomplish by enacting initiative 242 is, then, the main object of interpreting it. . . . To do this, the court should avoid unlikely or absurd or strained consequences . . . , and give the legislation a reading which makes it purposeful and effective.

(Citations omitted.)

The requirements upon which a breathalyzer test could be demanded of appellant have all been met. He chose to refuse the test after having been informed adequately of his right to additional tests, his right to refuse, and the consequences thereof. Appellant must now bear those consequences. His subsequent acquittal on the criminal charge has no effect on the requirement that his license be revoked. The order of the trial court is affirmed.

PEARSON and ARMSTRONG, JJ., concur.