[Nos. 42368, 42369, 42370.   En Banc.   August 3, 1972.]

THE STATE OF WASHINGTON, *Appellant*, v. JAMES LOUIS RICHARDSON, *Respondent*.
ROBERT E. SKARPERUD, *Respondent*, v. THE DEPARTMENT OF MOTOR VEHICLES, *Appellant*.
DONALD EUGENE BALKE, *Respondent*, v. THE DEPARTMENT OF MOTOR VEHICLES, *Appellant*.

*Slade Gorton, Attorney General,* and *John H. Keith, David R. Minikel,* and *Richard Mattsen, Assistants,* for appellant.

*Johnson & Gierke,* by *Bradford M. Gierke,* and *Allotta, Witt & Witt,* for respondent Richardson.

*Rutherford, Kargianis & Austin* and *Don M. Gulliford,* for respondent Skarperud.

*Robert S. Bryan,* for respondent Balke.

ROSELLINI, J.—Once more the implied consent statute

(Laws of 1969, ch. 1; Initiative Measure No. 242; RCW 46.20.092; 46.20.308; 46.20.311; 46.20.911, and 46.61.506) comes before us for construction.[1]

The facts are essentially the same in each of these consolidated cases. In each, the respondent was arrested by an officer having reasonable cause to believe that he was operating a motor vehicle while under the influence of intoxicating liquor, who requested that he submit to a chemical test of his breath to determine the presence of alcohol in his blood, and advised him that his refusal to so submit would result in the revocation of his license. In each case the respondent was further advised that he had the right to have additional tests administered by a qualified person of his own choosing.

Each of the respondents refused to submit to the breath test, which fact was reported in each case to the Department of Motor Vehicles, and the license of each respondent was revoked for 6 months. Each of them appealed to the superior court, and in each case the decision of the Department of Motor Vehicles was reversed for the sole reason that the arresting officer had failed to give the advice that a "qualified person" might be a physician, qualified technician, chemist, registered nurse, or other qualified person.

. The question before the court then is: Does the statute require, as a condition precedent to the revocation of the operator's license for refusal to submit to a test, not only that the arresting officer advise the operator of a motor vehicle of his right to have additional tests administered by a qualified person of his own choosing, but also that he advise that such a person may be a physician, qualified technician, chemist or registered nurse?

The applicable statutory provisions are as follows:

[RCW] 46.20.092 . . . The director of the depart-

---

[1]See *State v. Felix*, 78 Wn.2d 771, 479 P.2d 87 (1971); *Connolly v. Department of Motor Vehicles*, 79 Wn.2d 500, 487 P.2d 1050 (1971); and *Department of Motor Vehicles v. McElwain*, 80 Wn.2d 624, 496 P.2d 963 (1972). The act withstood a challenge to its constitutionality in *State v. Moore*, 79 Wn.2d 51, 483 P.2d 630 (1971).

ment of motor vehicles shall furnish every applicant for a driver's license or a driver's license renewal with a written summary of the provisions of RCW 46.20.092, 46.20.308, 46.20.311, 46.20.911, and 46.61.506.

[RCW] 46.20.308 . . . (1) . . . Such officer shall inform the person of his right to refuse the test, and of his right to have additional tests administered by any qualified person of his choosing as provided in RCW 46.61.506. The officer shall warn the driver that his privilege to drive will be revoked or denied if he refuses to submit to the test. . . .

. . .

(3) If, following his arrest, the person arrested refuses upon the request of a law enforcement officer to submit to a chemical test of his breath, after being informed that his refusal will result in the revocation or denial of his privilege to drive, no test shall be given. The department of motor vehicles, upon the receipt of a sworn report of the law enforcement officer that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor and that the person had refused to submit to the test upon the request of the law enforcement officer after being informed that such refusal would result in the revocation or denial of his privilege to drive, shall revoke his license or permit to drive or any nonresident operating privilege.

. . .

[RCW] 46.61.506 . . . (3) Chemical analysis of the person's blood or breath to be considered valid under the provisions of this section shall have been performed according to methods approved by the state toxicologist and by an individual possessing a valid permit issued by the state toxicologist for this purpose. The state toxicologist is directed to approve satisfactory techniques or methods, to supervise the examination of individuals to ascertain their qualifications and competence to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the state toxicologist.

(4) When a blood test is administered under the provisions of RCW 46.20.308, the withdrawal of blood for the purpose of determining its alcoholic content may be per-

formed only by a physician, a registered nurse, or a qualified technician. This limitation shall not apply to the taking of breath specimens.

(5) The person tested may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer. The failure or inability to obtain an additional test by a person shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer.

It will be seen that RCW 46.20.308 (3) provides for the revocation or denial of a license if the arrested person has refused to submit to a test "after being informed that his refusal will result in the revocation or denial of his privilege to drive," and does not expressly require the giving of information about the right to additional tests as a condition precedent to license revocation. However, we held in *Connolly v. Department of Motor Vehicles,* 79 Wn.2d 500, 487 P.2d 1050 (1971), that it was the apparent intent that the person arrested be advised of his right to have additional tests made by a qualified person of his own choosing, in order that he might be able to exercise an intelligent and informed judgment in deciding whether to submit or refuse to submit to a test.

To what extent must this right be elucidated if the arrested person is to have the information necessary to the formation of such a judgment? RCW 46.20.308 does not set forth the language which shall be used. It states that the operator of the vehicle shall be informed of the right "to have additional tests administered by any qualified person of his choosing as provided in RCW 46.61.506." If the latter section dealt only with the right to additional tests, it might reasonably be argued that the legislative body intended that the express language of the section be used in giving the information. But that section in fact contains a number of provisions which are concededly irrelevant to this right, as its code title attests: "Persons under influence of intoxi-

cating liquor—Presumptions—Evidence—Chemical tests—Information concerning tests."

Paragraph (3) appears to be applicable, since it provides for the issuing of permits to persons found "qualified" by the state toxicologist (*see State v. Felix,* 78 Wn.2d 771, 479 P.2d 87 (1971)), and provides that tests are not valid under that section unless administered by an individual possessing a valid permit, using methods approved by the toxicologist. Paragraph (4), pertaining to the administering of blood tests, arguably may have some relevance. The last sentence of paragraph (5), as well as the first sentence are relevant. It is not suggested that the people, in adopting this initiative, intended that all of these provisions be read to the person arrested. It is only the sentence which gives examples of types of persons who are qualified which the superior courts in these cases found sufficiently relevant to fall within the language "as provided in RCW 46.61.506."

This interpretation is not derived from the express provisions of the statute, but the respondents maintain that it is necessary to give effect to the words "as provided in RCW 46.61.506," and to enable the operator to understand the rights of which he is advised. In spite of the fact that the first sentence of paragraph (5) cannot be properly understood without studying paragraph (3), the respondents do not contend that they should have been enlightened as to the provisions of the latter. But we can find in the statute no expression of legislative intent that an operator be specifically advised of one of these rather than the other.

It appears to be the theory of the respondents that a person arrested will decide not to submit to a test if he thinks that *only* police officers are "qualified" persons and that the choice offered him is only among such officers. It is possible that a person under the circumstances of arrest might form in his own mind this misapprehension of the facts, but it would hardly be a rational conclusion to draw when he is told that he may have a qualified "person"—a word by no means synonymous with the word "officer"—

perform the tests, that he can choose the person himself, and that he must bear the expense.

The respondents' assumption, and that which was apparently adopted by the superior court in each of the cases, must be that the average person will be unable to understand that he has a right to have additional tests administered unless he is told precisely what kind of persons can administer such tests. This assumption must be based upon a further assumption that the average person who is capable of passing a driver's test and operating a motor vehicle, is at the same time incapable of understanding the meaning of simple language.

We cannot agree with these assumptions. The language which the people themselves used in describing the right in question, in RCW 46.20.308, is sufficiently clear to give to a person of average mentality the understanding that he may have his own tests made if he fears the accuracy or fairness of the test to be given by law enforcement officers. It is this information which he needs in order to make his decision whether to submit to a test, and it, plus the information that his license will be revoked or denied if he refuses, is all that is necessary to the exercise of an intelligent judgment upon that question.

This interpretation of the statute does not, as the respondents suggest, render the language "as provided in RCW 46.61.506" superfluous or meaningless. That section does elucidate in some detail the meaning of the words "qualified person" and a reference to it is logical. The advice given must be in harmony with that section, and if the arrested person decides to exercise his right to have additional tests made, he may ask for the further information which can be found in that section. None of the respondents claims that he requested a further explanation of his rights and was denied it.

We think it can be assumed rather safely that a person under the influence of intoxicating liquor will be better able to grasp a brief statement of his rights than a lengthy exposition of them. None of the respondents contends that

he was in fact deceived, confused or misled by the arresting officer's words.

■ An act should be construed to effect its purpose. The court should avoid unlikely or absurd or strained consequences and give to legislation a reading which makes it purposeful and effective. *State v. Felix, supra.*

The manifest intent of this initiative of the people is that any operator who is arrested by an officer having reasonable grounds to believe that he is intoxicated, upon being informed of his right to have additional tests made and of the consequence of his refusal, must either submit to a test for blood alcohol or be subject to a license revocation. *Department of Motor Vehicles v. McElwain,* 80 Wn.2d 624, 496 P.2d 963 (1972). We see no reason consistent with this purpose to read into the act a requirement that in every case a person arrested must be given a list of the kinds of persons who may be qualified to administer such an additional test, whether or not he manifests any interest in exercising the right.

We hold therefore that under the law in question, an operator who refuses to submit to a test for blood alcohol, is properly subject to license revocation if he was arrested by an officer having reasonable grounds to believe that he was operating the vehicle while under the influence of intoxicating liquor, who requested that he submit to a breath test for the presence of alcohol in his blood and who advised him of his right to refuse and the consequences of his refusal and also advised him that he had the right to have additional tests made by a qualified person of his own choosing and at his own expense.

In each case, the judgment is reversed and the decision of the Department of Motor Vehicles is reinstated.

HAMILTON, C.J., FINLEY, HUNTER, HALE, NEILL, STAFFORD, WRIGHT, and UTTER, JJ., concur.

Petitions for rehearing denied September 20, 1972.