[No. 1297-1.    Division One—Panel 2.    May 7, 1973.]

RICHARD C. STRAND, *Respondent*, v. THE DEPARTMENT OF MOTOR VEHICLES, *Appellant*.

878

*Slade Gorton, Attorney General,* and *R. Timothy Oliver, Assistant,* for appellant.

*Kinzel, Acheson & Marshall* and *William L. Kinzel,* for respondent.

CALLOW, J.—*Quaere:* Must it be shown that a motor vehicle operator actually understood the consequences of a refusal to submit to a breathalyzer test before his driving privileges can be revoked under RCW 46.20.308 for refusing the test?

We hold it need only be shown that he was informed of his right to refuse the test, that he was warned, however, that his privilege to drive would be revoked or denied if he refused to submit to the test, and of his right to have additional tests administered by a qualified person of his own choosing. RCW 46.20.308 and 46.61.506. A driver who is advised of his rights under the implied consent law but declines to take a breathalyzer test is deemed to have "refused" the test so as to require revocation of his license unless he objectively and unequivocally manifested that he did not understand his rights and the warning concerning the consequences of refusal and was denied clarification. A lack of understanding not made apparent to the officer is of no consequence.

This action is an appeal by the Department of Motor Vehicles. The trial court is claimed to have erred in holding that:

1. The Department of Motor Vehicles failed to follow due process of law in revoking the operator's driving privileges under RCW 46.20.308 since it failed to establish that he understood the consequences of refusing to submit to a breathalyzer test, and

2. The operator's driving privileges should be reinstated.

On March 13, 1970, at approximately 10 p.m., an officer of the Washington State Patrol stopped the driver for erratic

driving. The officer observed the driver's demeanor and performance on physical tests and then arrested him for driving while under the influence of intoxicating liquor. At the King County jail, the officer informed him of his statutory rights and warned him of the consequences of refusing a chemical test of his breath. He asked the driver if he understood and received a reply in the affirmative. He asked him if he would take the breathalyzer test, and the driver replied, "No. What good would it do me." The state trooper twice advised him that the period of revocation would be 6 months if he refused to take the breathalyzer test, but the driver continued to refuse.

At the trial, the driver testified that he remembered most of the events of his arrest and later proceedings. He remembered the state patrol officer reading from a card about the breathalyzer but said he did not appreciate the consequences of his decision not to submit to the test. He said he first became aware that he would lose his license when he talked with his attorney later. The finding of the trial court that the driver did not understand, at the time, the consequences of his refusal is not challenged. The department challenges the inherent theory that a motor vehicle operator must understand, in his own mind, the legal consequences of his refusal to take the breathalyzer test before his driving privileges may be revoked for that refusal and that this must be proven by the department.

RCW 46.20.308(1) and 46.20.308(3) read in part:

(1) Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent, subject to the provisions of RCW 46.61 .506, to a chemical test or tests of his breath or blood for the purpose of determining the alcoholic content of his blood if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor. The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor

vehicle upon the public highways of this state while under the influence of intoxicating liquor. Such officer shall inform the person of his right to refuse the test, and of his right to have additional tests administered by any qualified person of his choosing as provided in RCW 46.61.506. The officer shall warn the driver that his privilege to drive will be revoked or denied if he refuses to submit to the test. . . .

. . .

(3) If, following his arrest, the person arrested refuses upon the request of a law enforcement officer to submit to a chemical test of his breath, after being informed that his refusal will result in the revocation or denial of his privilege to drive, no test shall be given. The department of motor vehicles, upon the receipt of a sworn report of the law enforcement officer that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor and that the person had refused to submit to the test upon the request of the law enforcement officer after being informed that such refusal would result in the revocation or denial of his privilege to drive, shall revoke his license or permit to drive or any nonresident operating privilege.

■ In interpreting initiative measures, the main objective is to ascertain and give effect to the intention of the people. Unlikely, strained, or absurd consequences are to be avoided, and the initiative should be given a reading which makes it purposeful and effective. *State v. Felix,* 78 Wn.2d 771, 479 P.2d 87 (1971); *Fritts v. Department of Motor Vehicles,* 6 Wn. App. 233, 492 P.2d 558 (1971).

■ The intent of this initiative is to place an operator, arrested for driving while intoxicated, in the position that his license will be revoked, if upon being informed under RCW 46.20.308 of his rights and the consequences of his refusal to take the breathalyzer, he withdraws his pre-imposed consent to the test by reneging on this acquiescence with which he is saddled by statute. *State v. Richardson,* 81 Wn.2d 111, 499 P.2d 1264 (1972).

■ In *Department of Motor Vehicles v. McElwain,* 80

Wn.2d 624, 496 P.2d 963 (1972), the court held that a driver's license may be suspended under RCW 46.20.308 where the driver is too intoxicated to understand the advice given him and to respond intelligently to it. The court noted at page 628:

We conclude that when the advice as to the consequences of a refusal is given in the form prescribed by the statute, and the operator, though conscious, does not willingly submit and cooperate in the administration of a test, he must be deemed to have refused.

*See also Voetberg v. Department of Motor Vehicles,* 80 Wn.2d 629, 496 P.2d 966 (1972); *Junkley v. Department of Motor Vehicles,* 7 Wn. App. 827, 830, 503 P.2d 752 (1972), held that "the statute requires only that a person be given the opportunity to exercise an intelligent judgment."

With the Washington position in mind, we turn to other jurisdictions for assistance in solving the instant problem. *Hoban v. Rice,* 25 Ohio St. 2d 111, 267 N.E.2d 311 (1971) (discussed in *Department of Motor Vehicles v. McElwain*), upheld an order suspending a driver's license for refusal to submit to a test for alcohol. In response to a contention similar to that in the instant case, the court stated at page 117:

I. The first issue to be decided is whether a refusal to take a sobriety test must be knowingly and intentionally made. The licensee's words, acts, overall conduct and other manifestations of a willingness or unwillingness to take the sobriety test will be considered by the trier of the facts in determining whether there was a refusal.

The determination will be based on an objective standard, not a subjective standard, such as the state of mind of the licensee. The subjective state of mind of the licensee cannot control the outcome of the proceedings, and a police officer is not required to know the state of mind of the person arrested and determine whether such person understood he was refusing to submit to the test. To require that would place an impossible burden on the arresting officer.

We find also in *Cahall v. Department of Motor Vehicles,* 16 Cal. App. 3d 491, 94 Cal. Rptr. 182 (1971):

The question whether a driver "refused" a test within the meaning of the statute is a question of fact. (*Walker* v. *Department of Motor Vehicles*, 274 Cal.App.2d 793, 799, [79 Cal.Rptr. 433].) When there is no evidence of confusion, and where apparent confusion is not demonstrated and is not apparent to the arresting officer, no further clarification on the part of the arresting officer is required. (See *Wethern* v. *Orr*, 271 Cal.App.2d 813, 815, [76 Cal.Rptr. 807].)

An earlier case, *Rust v. Department of Motor Vehicles*, 267 Cal. App. 2d 545, 73 Cal. Rptr. 366 (1968), was distinguished because the defendant in *Rust* was confused after hearing the *Miranda* warnings and erroneously believed he was entitled to the presence of an attorney before submitting to a chemical test. The *Cahall* court stated:

> In determining whether an arrestee's refusal is the result of confusion, the crucial factor is not the state of the arrestee's mind; it is the fair meaning to be given his response to the demand that he submit to the chemical test.

*Cahall v. Department of Motor Vehicles, supra.*

A similar standard is found in *Campbell v. Superior Court*, 106 Ariz. 542, 553, 479 P.2d 685 (1971):

> It is the opinion of this court that a refusal to submit to the test occurs where the conduct of the arrested motorist is such that a reasonable person in the officer's position would be justified in believing that such motorist was capable of refusal and manifested an unwillingness to submit to the test. *See* State v. Hurbean, 23 Ohio App.2d 119, 261 N.E.2d 290, 297 (1970).

Against this background we examine the finding of fact made by the trial court which stated:

> Petitioner at the time of refusal did not understand that his privilege to drive upon the public highways of this state would be revoked or denied by the Department of Motor Vehicles.

That finding reflects the subjective belief of the driver rather than his objective manifestations. No finding was entered and the record is hazy (though the officer advised the driver twice) as to whether the driver made his confu-

sion over the consequences of a refusal apparent so as to place the officer administering the test on notice that the driver was confused or misunderstood the information. The driver's statement, "No. What good would it do me." is ambiguous. When a driver clearly exhibits that he is confused or does not understand the information directed by RCW 46.20.308 to be given him by the officer, then the officer is required to further clarify the driver's alternatives and the consequences of electing one or the other. Under these circumstances, when clarification is not provided, the license of the driver may not be revoked on the ground that he refused the breathalyzer test. The burden of showing that he made his confusion apparent to the officer and was denied further clarification is upon the driver who proposes such a defense. When such a defense is presented, a finding as to whether or not the defendant explicitly exhibited his lack of understanding and was denied clarification must be entered.

We are unable to tell from the trial court's findings if the driver clearly manifested confusion to the officer and was denied clarification. The trial court did find that the driver did not understand the warnings given him. In the light of that finding and the record, the establishment of the fact essential for disposition of this cause is for the trial court who can best evaluate the demeanor of the witnesses, the inflections in their testimony and their credibility.

The cause is remanded for a further hearing and proceedings consistent with this opinion.

HOROWITZ and WILLIAMS, JJ., concur.