[No. 2548-1.    Division One.    June 9, 1975.]

DALE DOUGLAS GREENWOOD, *Respondent*, v. THE DEPARTMENT OF MOTOR VEHICLES, *Appellant*.

*Slade Gorton, Attorney General*, and *David R. Minikel, Assistant*, for appellant.

*Alva C. Long*, for respondent.

SWANSON, J.—Does a person arrested pursuant to RCW 46.20.308, the implied consent statute, have the right to subject his decision to submit to a chemical test of his breath, as directed by the arresting officer, to the condition that he *first* be permitted to have a blood test administered by a qualified person of his choosing? That is the sole question presented by this appeal.

The trial court's findings of fact are undisputed. The

parties have stipulated that at about 9 p.m. on May 17, 1972, the respondent Greenwood was arrested near Renton, Washington, by Trooper Ronald E. Plowman of the Washington State Patrol who had reasonable grounds to believe that Greenwood was operating a motor vehicle while under the influence of intoxicating liquor. Trooper Plowman prepared a breathalyzer machine for the purpose of making a chemical test of Greenwood's breath and three times requested Greenwood to submit to the test, each time reading a statement to Greenwood advising him of the consequences of refusal to submit to the test.[1] Greenwood declined to take the breath test but indicated that he wanted a blood test. Thereupon, he was advised that the blood test could not be taken in lieu of the breath test but was transported to Valley General Hospital where a blood test was given. At approximately 1:10 a.m., after completion of the blood test, Greenwood stated, "Now, I can take the breathalyzer [at] anytime." Trooper Plowman then advised Greenwood that he had already had three chances to take the test, and transported him to King County jail for booking.

Subsequently, pursuant to RCW 46.20.308(3), the Department of Motor Vehicles ordered revocation of Greenwood's license to drive for 6 months. Greenwood appealed this revocation to the Superior Court which ordered that his license be reinstated, based primarily upon the following conclusion of law:

There was substantial compliance with the statute and the statute does not require that the breath test at the

---

[1]Trooper Plowman testified that he read the following statement to Greenwood three times, "You are now under arrest for driving a motor vehicle while under the influence of intoxicating liquor. I am now asking you to submit to a chemical test of your breath for analysis to determine the amount of alcohol in your blood, and accordingly I must advise you that you have the right to refuse; however, if you refuse to submit to this test, your privilege to drive will be revoked by the Department of Motor Vehicles. You have the right to take additional tests administered by any qualified physician, qualified technician, registered nurse or other qualified person at your own expense."

direction of a law enforcement officer be administered first.

Conclusion of law No. 2.

That petitioner's [Greenwood's] final response after the blood test was administered does not constitute a refusal.

Conclusion of law No. 3. The Department of Motor Vehicles appeals, assigning error to the quoted conclusions of law, and to the trial court's conclusion of law, order and judgment directing the reinstatement of Greenwood's driving privileges. Greenwood's counsel did not file a brief in support of the trial court's judgment, but appeared at oral argument to urge that we affirm on the basis that the trial court properly concluded that Greenwood in good faith substantially complied with the implied consent statute. We have determined, however, that the department's claims of error are meritorious and that reversal is required.

The relevant portion of RCW 46.20.308 provides:

(1) Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent . . . to a *chemical test . . . of his breath* . . . *The test* . . . shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor. Such officer shall inform the person of his right to refuse *the test*, and of his right to have *additional* tests administered by any qualified person of his choosing . . . The officer shall warn the driver that his privilege to drive will be revoked or denied if he refuses to submit to *the test*. Unless the person to be tested is unconscious, *the chemical test administered shall be of his breath only*.

(Italics ours.) The trial judge took the view that Greenwood, despite his three-time refusal to take the breath test, nevertheless did not "refuse" to take such test within the meaning of RCW 46.20.308 because he was willing to take the breathalyzer "anytime" after a blood test was adminis-

tered. Thus, the trial judge concluded that the reference to "additional tests" in the statute and in the arresting officer's recitation of rights might be misunderstood by an accused and, in any event, did not constitute a requirement that the breath test be given first, prior to "additional tests," such as the blood test requested by Greenwood.[2]

■ We disagree. In this case, there is no contention that Greenwood was confused as to the nature of his rights under the implied consent law as thrice explained to him by the arresting officer. *See Shoemaker v. Department of Motor Vehicles*, 11 Wn. App. 860, 526 P.2d 908 (1974); *Department of Motor Vehicles v. Riba*, 10 Wn. App. 857, 520 P.2d 942 (1974). Moreover, it is undisputed that Greenwood was properly advised of his rights at the time of his arrest, he was not unconscious, and therefore he was *"afforded the opportunity* to exercise an intelligent judgment to submit or refuse to submit to a chemical test of his breath." *Hering v. Department of Motor Vehicles*, 13 Wn. App. 190, 193, 534 P.2d 143 (1975). *See also Department of Motor Vehicles v. McElwain*, 80 Wn.2d 624, 496 P.2d 963 (1972); *Welch v. Department of Motor Vehicles*, 13 Wn. App. 591, 536 P.2d 172 (1975). We are of the opinion that the meaning of the word "additional" as it is used in RCW 46.20.308(1) is that a person who is arrested pursuant to the implied consent statute has the right to have tests of his own choosing *after* he has either submitted to or refused the test or tests directed by the law enforcement officer. In this case, Greenwood was conscious and, by the terms of the statute, the only test which the arresting officer could request him to take was the breath test. Accordingly, in this case, the operative meaning of the statu-

---

[2]The trial judge stated in his oral ruling as follows: "Well, when a man is arrested, he is read this thing, and he doesn't have time to read that word, 'additional,' or to get an attorney, and it could be misunderstood as to which comes first. I am inclined therefore to go along with Mr. Long that this case should be dismissed because he in good faith was willing to take the test. There was substantial compliance in that he was willing to take it. I don't feel we should take away his license under these conditions."

tory word "additional" must be that the breath test is to be administered or refused prior to any "additional" tests, such as the blood test requested by Greenwood.

■■ The drafters of legislation, including legislation such as that involved here which is the product of an initiative by the people, are presumed to have used no superfluous words and we must accord meaning, if possible, to every word in a statute consistent with its purpose. *Metcalf v. Department of Motor Vehicles*, 11 Wn. App. 819, 525 P.2d 819 (1974). One of the purposes of the implied consent statute is to provide an efficient means of gathering reliable evidence of intoxication or nonintoxication. *Nowell v. Department of Motor Vehicles*, 83 Wn.2d 121, 516 P.2d 205 (1973). "The court should avoid unlikely or absurd or strained consequences and give to legislation a reading which makes it purposeful and effective." *State v. Richardson*, 81 Wn.2d 111, 117, 499 P.2d 1264 (1972). It would be an absurd consequence destructive to the purpose of the implied consent law if we were to construe the word "additional" in RCW 46.20.308(1) to mean that an accused could delay the taking of tests directed by the arresting officer— the results of which are available to the State as evidence —until after he had taken tests of his own choosing, the results of which are not available to the State. *See* RCW 46.61.506.

Further, the common meaning of the word "additional" is "existing or coming by way of addition" and "addition" means "anything added." *Webster's Third New International Dictionary* (1969). The use of the word "additional" in RCW 46.20.308(1) clearly implies that something extra may be added to something in existence, namely, tests requested by the accused may be added to the tests or test previously given by the arresting officer, or refused by the arrested person. *See State v. Adams*, 273 Minn. 228, 140 N.W.2d 847 (1966); *York Pharmacal Co. v. Henry C. Beckmann Realty & Inv. Co.*, 304 S.W.2d 40 (Mo. Ct. App. 1957). It would be contrary to the purpose of the statute to

construe "additional" to mean "alternative" or "at any time." *See Albright v. Department of Motor Vehicles*, 81 Wn.2d 609, 503 P.2d 739 (1972). As the state Supreme Court observed in *State v. Richardson, supra* at pages 116-17:

> The language which the people themselves used in describing the right in question, in RCW 46.20.308, is sufficiently clear to give to a person of average mentality the understanding that he may have his own tests made if he fears the accuracy or fairness of the test to be given by law enforcement officers. *It is this information which he needs in order to make his decision whether to submit to a test*, and it, plus the information that his license will be revoked or denied if he refuses, is all that is necessary to the exercise of an intelligent judgment upon that question.
>
> . . .
>
> The manifest intent of this initiative of the people is that any operator who is arrested by an officer having reasonable grounds to believe that he is intoxicated, upon being informed of his right to have *additional* tests made and of the consequence of his refusal, must either *submit to a test* for blood alcohol [breathalyzer] *or be subject to a license revocation.*

(Italics ours.)

Based upon the foregoing, we hold that RCW 46.20.308 requires a person arrested thereunder to submit to a chemical test properly directed by the arresting officer prior to taking additional tests at his own request or be deemed to have refused the test requested by the officer.[3] The trial court erred in reaching contrary conclusions.

---

[3]The State directs us to cases in other jurisdictions in which it has been held that the passage of time may bar an accused from rescinding his initial refusal to submit to a blood alcohol test directed by a law enforcement officer *See Application of Kunneman*, 501 P.2d 910 (Okla. Ct. App. 1972); *State v. Palmer*, 291 Minn. 302, 191 N.W.2d 188 (1971); *In re Brooks*, 27 Ohio St. 2d 66, 271 N.E.2d 810 (1971); *Krueger v. Fulton*, 169 N.W.2d 875 (Iowa 1969); *Zidell v. Bright*, 264 Cal. App. 2d 867, 71 Cal. Rptr. 111 (1968). We do not reach the question of whether the mere passage of time may constitute a "refusal" within the meaning of RCW 46.20.308. We rest our holding herein on the fact that

· The judgment is reversed and the decision of the Department of Motor Vehicles ordering the revocation of Greenwood's driver's license for 6 months is reinstated. ·

FARRIS and JAMES, JJ., concur.

Greenwood, contrary to the meaning of the word "additional" in the statute, declined to submit to the breathalyzer until the arresting officer had acceded to his request for a blood test, and not upon the fact that Greenwood was not willing to take the breathalyzer until 1:10 a.m., some 2 to 3 hours after his initial refusal to do so.