# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JENELL CORBIN THOMPSON, | No. 56646-0-II |
| Respondent, | |
| v. | |
| STATE OF WASHINGTON DEPARTMENT OF LICENSING, | UNPUBLISHED OPINION |
| Petitioner. | |

VELJACIC, J. – Washington's implied consent law provides for the revocation of a licensee's driver's license where the licensee is arrested for driving while under the influence and refuses to submit to a blood or breath alcohol test. The law provides the licensee with procedural protections, including the right to appeal to the superior court from an administrative license revocation. In this case, the superior court overturned the Department of Licensing's revocation of Jenell Thompson's driver's license. We granted discretionary review and hold that the Department properly revoked Thompson's driving privileges. Accordingly, we reverse the superior court's order.

## FACTS

Tacoma Police Officer Angel Castaneda responded to a report of a vehicle accident. When he arrived, he learned that the vehicle's driver, Thompson, had lost control of her vehicle after driving at a high rate of speed, and crashed into a curb. Thompson was unaware that she had been in an accident.

Castaneda noticed that Thompson's eyes were bloodshot and her speech was slurred. He also smelled alcohol on Thompson's breath. Thompson admitted to Castaneda that she had been drinking.

At the scene, Thompson blew into a portable breathalyzer test, which showed that her blood alcohol level was .206 – more than double the legal limit. RCW 46.61.502(1)(a) According to Castaneda's police report, he arrested Thompson at this point for driving under the influence and transported her to the police station. A backup officer also stated in his report that this is when Castaneda arrested Thompson. The backup officer also reported that when Castaneda attempted to place handcuffs on Thompson she began to take off her jacket and run away. Both officers had to detain her.

At the police station, Castaneda informed Thompson of Washington's implied consent laws and that her license would be revoked if she refused to submit to an official breathalyzer test where two separate samples are taken independently to determine alcohol concentration. Thompson expressed no confusion over this information. Castaneda then asked Thompson if she would be willing to blow into the breathalyzer machine at the police station, she responded, "Why would I blow in that if you know I drank." Clerks Papers (CP) at 4 (Finding of Fact (FF) 5). She did not express any intent to breath into the machine and ultimately did not take the test.

The Department revoked Thompson's license for one year for refusing to take the breathalyzer test. Thompson requested an administrative hearing to contest the revocation. She argued that the revocation should be rescinded because she was not arrested at the time Castaneda asked her to take the breathalyzer test and, even if she was arrested, she did not refuse the test, she merely asked a question.

Entering findings of fact and conclusions of law, the Department's hearing examiner found Castaneda arrested Thompson at the scene of the accident. The examiner concluded that Thompson's testimony was not credible and that her recollections and perceptions were unreliable given her level of intoxication at the time of the incident. The examiner concluded Thompson declined the breathalyzer test after being advised of the consequences. The examiner sustained the Department's suspension of Thompson's driving privileges.

Thompson appealed to the superior court. The court reversed the hearing examiner, concluding that Thompson did not intentionally refuse to take the breathalyzer test. We granted discretionary review.

ANALYSIS

The Department contends that the superior court erred in overturning the hearing examiner's sustaining of the Department's revocation of Thompson's driver's license. The Department argues that, after being arrested, Thompson refused to take the breathalyzer test; therefore, her driver's license was properly revoked. We agree.

I.    LEGAL PRINCIPLES

Washington courts have repeatedly stated that driving is a privilege and not a right. *State v. Fraser*, 199 Wn.2d 465, 483, 509 P.3d 282 (2022). Under former RCW 46.20.308 (2019),[1] a person who drives in this state is deemed to have consented to a test to determine the alcohol content of his or her blood or breath, if arrested for suspicion of driving under the influence. The purposes of the law are: "(1) to discourage individuals from driving motor vehicles while under the influence of alcohol or drugs; (2) to remove the driving privileges of those individuals who are disposed to driving while intoxicated; and (3) to provide an efficient means of gathering reliable evidence of intoxication or nonintoxication." *Medcalf v. Dep't of Licensing*, 133 Wn.2d 290, 297, 944 P.2d 1014 (1997).

If the driver refuses to submit to the test, the Department will revoke his or her driver's license. RCW 46.20.308(2)(a); RCW 46.20.308(6). The word "refuse" is not defined in the statute and it is, therefore, given its ordinary meaning. *Medcalf*, 133 Wn.2d at 298. Whether a driver refused the test is a question of fact. *Id*. at 302.

We review the Department's decision regarding license revocation in the same position as the superior court. *Soushek v. Dep't of Licensing*, 1 Wn. App. 2d 352, 356, 405 P.3d 209 (2017). Our review is limited to determining whether the Department has committed any errors of law and whether the findings of fact are supported by substantial evidence in the record. RCW 46.20.308(8). Substantial evidence is evidence that is sufficient to persuade a fair-minded person of the truth of the stated premise. *Singh v. Dep't of Licensing*, 5 Wn. App. 2d 1, 9, 421 P.3d 504 (2018).

---

1 The implied consent statute was recently amended to change the term "marijuana" to "cannabis." LAWS of 2022, ch. 16, § 38.

II.     TIME OF ARREST

Initially, we address Thompson's argument that she was not required under Washington's implied consent laws to breath into the breathalyzer test at the police station because she was not under arrest yet. We disagree.

The hearing examiner found that Castaneda arrested Thompson at the scene of the accident. Both Castaneda's and the backup officer's reports state that Castaneda arrested Thompson at the scene of the accident. Because the police reports are sufficient to persuade a fair-minded person of the truth of the declared premises, substantial evidence supports the hearing examiner's finding.

III.    REFUSAL OF TEST

We next turn to the Department's contention that Thompson refused to submit to the breathalyzer test at the police station, therefore, the Department properly revoked her driving privileges. We agree.

At the scene of the accident, Thompson had a blood alcohol level of .206 and was unaware that she had even been in an accident. The backup officer noted that she tried to resist arrest and that both officers had to detain her. At the police station, Castaneda informed Thompson of Washington's implied consent laws and that her license would be revoked if she refused to submit to an official breath test. Thompson expressed no confusion over this information. Castaneda asked Thompson if she would be willing to blow into the breathalyzer machine at the police station, she responded, "Why would I blow in that if you know I drank." CP at 4 (FF 5) She did not express any intent to breath into the machine and did not take the test.

After her license was revoked, Thompson claimed she was merely asking Castaneda a question and did not actually intend to refuse the test. In *Department of Motor Vehicles v. McElwain*, 80 Wn.2d 624, 628, 496 P.2d 963 (1972), the Supreme Court held that if a driver "does

5

not willingly submit and cooperate in the administration of a test, he must be deemed to have refused." Division Two of this court, further clarified that a driver must "objectively and unequivocally manifest[] that he did not understand his rights and the warning concerning the consequences of refusal and was denied clarification. A lack of understanding not made apparent to the officer is of no consequence." *Strand v. Dep't of Motor Vehicles*, 8 Wn. App. 877, 878, 509 P.2d 999 (1973). Moreover, in *Medcalf*, the Supreme Court held that the purposes of the implied consent statute "will not be furthered by permitting a driver to show, at a later hearing, that he subjectively wanted to take the breath test but . . . was unable to do so." 133 Wn.2d at 302.

Here, Thompson was intoxicated and combative at the scene of the accident. At the police station, she made a statement about not taking the test because the officer knew she had been drinking. She did not further question the test and ultimately did not take the test.

The facts of this case support the hearing examiner's conclusion that Thompson's claim that she was merely asking a question about taking the breathalyzer test was not credible and that her recollections and perceptions were unreliable given her level of intoxication at the time of the incident. The facts also support the hearing examiner's conclusion that Thompson declined the breathalyzer test after being advised of the consequences. Because Thompson refused the breathalyzer test, the Department properly revoked her driving privileges under our State's implied consent laws.

CONCLUSION

We hold that the hearing examiner properly affirmed the Department's revocation of Thompson's driving privileges. Accordingly, we reverse the superior court's order overturning the examiner's decision.

6

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Maxa, P.J.

Price, J.