# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JAN 09 2014

~~Madsen~~ C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Jan. 9, 2014

Ronald R. Carpenter
Supreme Court Clerk



## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 86885-9 |
| Respondent, | ) | EN BANC |
| v. | ) | Filed: JAN 09 2014 |
| STEPHEN CHRISS JOHNSON, | ) |  |
| Petitioner. | ) |  |

FAIRHURST, J.—The Washington State Department of Licensing (DOL) suspended petitioner Stephen Chriss Johnson's driver's license after receiving notice that he had failed to pay a traffic fine. Johnson was later arrested and convicted for driving while license suspended in the third degree (DWLS 3rd).

Johnson appeals his DWLS 3rd conviction on two grounds. First, he argues former RCW 46.20.342(1)(c)(iv) (2008), the statute defining DWLS 3rd, did not proscribe his continuing to drive after the suspension of his license for failing to pay a traffic fine. Alternatively, he argues that because he is indigent, the suspension is invalid under the Fourteenth Amendment to the United States

Constitution's due process and equal protection clauses, which Johnson argues required the State to inquire into his ability to pay the fine before suspending his license, and the State apparently did not do so. Johnson also argues that his indigence entitled him to appointed counsel for his appeal and that the district court erred by denying him this counsel. Consequently, he seeks reimbursement for attorney fees spent in his defense.

We reject Johnson's challenges to his conviction but remand for further proceedings to determine Johnson's right to reimbursement for attorney fees. We hold that the plain meaning of former RCW 46.20.342(1)(c)(iv) allows the State to convict a driver for DWLS 3rd where the underlying license suspension occurred for failure to pay a fine. We further hold that Johnson is not constitutionally indigent, and so we decline to address Johnson's constitutional challenge to the suspension of his license because he lacks standing to raise that challenge. Finally, we hold that Johnson is statutorily indigent, and we remand Johnson's case to the district court with instructions to enter an order designating him either as (1) indigent or (2) indigent and able to contribute. If he is able to contribute, the district court must enter an order determining the costs he should bear for his appeal.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Johnson's driver's license expired in 2001, and a dispute with DOL about the validity of his mailing address prevented him from renewing it. In 2007, police stopped Johnson and issued to him a notice of infraction for driving without a valid license. Johnson requested and appeared for a hearing to contest the notice, but the district court found he committed the infraction and imposed a fine of $260. Johnson did not pay the fine, and DOL suspended his license after the infraction trial court notified DOL of his failure to pay.

In September 2008, nearly 11 months after the effective date of the suspension of Johnson's license, a Lewis County deputy sheriff witnessed a truck driving without a rear bumper or mud flaps. The deputy ran a check of the truck's plates and discovered that DOL had suspended the driver's license of the truck's registered owner—Johnson. The deputy then stopped Johnson and arrested him for DWLS 3rd.

Johnson proceeded to trial, where the Lewis County District Court found him guilty of DWLS 3rd, imposed an $805.50 fine, and sentenced him to 90 days in jail, but suspended all jail time except for the four days Johnson had already served. The court offered Johnson a payment plan for the fine, but he refused and asked the court to send the fine to collections.

Johnson appealed his conviction to the Lewis County Superior Court. During the pendency of this appeal, Johnson moved to replace his appointed counsel. Considering this motion, the district court noted that Johnson had filled out the forms for determining his status as indigent incompletely and examined Johnson under oath to determine whether he had a right to appointed counsel. Johnson testified that he had no income, had not worked in nearly 30 years, and received state aid in the form of food stamps and energy assistance. However, he also testified that he owned his $300,000 home free of liens and had obtained a nearly $3 million judgment against his neighbor in a tort suit, although he stated the neighbor appeared judgment proof. After this hearing, the district court determined that Johnson was not indigent and removed his appointed counsel.

The superior court affirmed Johnson's conviction. Johnson then moved for discretionary review from the Court of Appeals. The court commissioner denied review by order, and a panel of the court denied Johnson's motion to modify this order. Johnson then moved for discretionary review by this court, which we granted.

## II. ISSUES PRESENTED

A. Do the reasons for license suspension codified in former RCW 46.20.342(1)(c)(iv) encompass the failure to pay the fine for a traffic infraction?

B. Does Johnson have standing to raise his constitutional challenge to the suspension of his license?

C.   Did the trial court err in denying Johnson appointed counsel for his appeal?

### III.   ANALYSIS

A.   The State proved Johnson violated former RCW 46.20.342(1)(c)(iv) because a failure to pay is a failure to comply with the terms of a notice of infraction

Johnson first contends that his conviction is invalid because while he admits he did not pay his fine, he argues that is not one of the enumerated bases on which the State may support a DWLS 3rd charge under former RCW 46.20.342(1)(c)(iv). We review de novo the meaning of a statute. *State v. Siers*, 174 Wn.2d 269, 274, 274 P.3d 358 (2012).

"In interpreting a statute, our fundamental objective is to ascertain and carry out the legislature's intent." *State v. Gray*, 174 Wn.2d 920, 926, 280 P.3d 1110 (2012). "To properly understand this statute, we look for its plain meaning, 'discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'" Dissent at 2 (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002)). Where a statute is ambiguous after the plain meaning analysis, "we 'may look to the legislative history of the statute and the circumstances surrounding its enactment.'" *State v. Sweany*, 174 Wn.2d 909, 915, 281 P.3d 305 (2012) (quoting *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003)). The statute in question here is not ambiguous.

1.     Former RCW 46.20.342

We begin with the text of the DWLS statute, former RCW 46.20.342, which provides, in relevant part:

> (1) It is unlawful for any person to drive a motor vehicle in this state while that person is in a suspended or revoked status or when his or her privilege to drive is suspended or revoked in this or any other state.
>
> . . . .
>
> (c) A person who violates this section when his or her driver's license or driving privilege is, at the time of the violation, suspended or revoked solely because . . . (iv) the person has failed to respond to a notice of traffic infraction, failed to appear at a requested hearing, violated a written promise to appear in court, or has failed to comply with the terms of a notice of traffic infraction or citation, as provided in [former] RCW 46.20.289 [(2005)] . . . is guilty of driving while license suspended or revoked in the third degree, a misdemeanor.[1]

The reason for the underlying license suspension is an essential element of any DWLS charge. *State v. Smith*, 155 Wn.2d 496, 502, 120 P.3d 559 (2005). Consequently, a conviction under former RCW 46.20.342(1)(c)(iv) requires the State to prove both (1) that the defendant drove with a suspended license and (2) that the license suspension occurred because of one of the enumerated reasons— that is, that the defendant (a) failed to respond to a notice of infraction, (b) failed to appear in court, (c) violated a written promise to appear in court, or (d) failed to comply with the terms of a notice of infraction.

---

[1] The legislature amended former RCW 46.20.289, effective June 7, 2012, to address the concerns voiced by many of the amici in this case. LAWS OF 2012, ch. 82, § 3.

Johnson did not fail to respond to a notice of infraction—Johnson responded by contesting the citation and requesting a hearing, as provided by former RCW 46.63.070(3) (2006). Johnson also did not fail to appear in court or violate a written promise to appear in court, as provided by former RCW 46.63.070(6)(b)—it is undisputed Johnson appeared for the hearing he requested to contest his notice of infraction.

However, in failing to pay the fine imposed when the infraction trial court rejected Johnson's challenge, Johnson failed to comply with the notice of infraction. Former RCW 46.20.342(1)(c)(iv) includes, as an underlying basis for suspension supporting a DWLS 3rd charge, suspension imposed because an individual did not "comply with the terms of a notice of traffic infraction or citation, *as provided in [former] RCW 46.20.289.*" (Emphasis added.) "To be reasonable, an interpretation must, at a minimum, account for all the words in a statute." *Five Corners Family Farmers v. State*, 173 Wn.2d 296, 312, 268 P.3d 892 (2011). We thus cannot ignore that final clause referring to former RCW 46.20.289; we must instead assume that clause was intended to serve some purpose "because we presume the legislature says what it means and means what it says." *State v. Costich*, 152 Wn.2d 463, 470, 98 P.3d 795 (2004). Our task is to determine, as a matter of law, what that purpose was.

In the context of former RCW 46.20.342(1)(c)(iv), the reference to former RCW 46.20.289 is clearly intended to serve the purpose of adding clarity and definition to the terms preceding it. *Cf. Cuyler v. Adams*, 449 U.S. 433, 446, 101 S. Ct. 703, 66 L. Ed. 2d 641 (1981) (a reference to a prisoner's rights to resist interstate extradition under a detainer agreement, "as provided in" another source of law, must be "construed as securing something more" than the rights already explicitly provided in the detainer agreement; otherwise, the "as provided in" language would be rendered superfluous); *State v. Richardson*, 81 Wn.2d 111, 116, 499 P.2d 1264 (1972) (A statutory reference following "'as provided in'" language in the implied consent statute "does elucidate in some detail the meaning of the words 'qualified person' and a reference to it is logical." (quoting former RCW 46.61.506 (1975))); *see also State v. Bunker*, 169 Wn.2d 571, 578, 238 P.3d 487 (2010) ("Related to this [last antecedent] rule is the corollary principle that 'the presence of a comma before the qualifying phrase is evidence the qualifier is intended to apply to all antecedents instead of only the immediately preceding one.'" (internal quotation marks omitted) (quoting *City of Spokane v. Spokane County*, 158 Wn.2d 661, 673, 146 P.3d 893 (2006))). The legislature intended to clarify and add meaning to former RCW 46.20.342(1)(c)(iv) by reference to former RCW 46.20.289.

Former RCW 46.20.289 provides, in relevant part,

[DOL] shall suspend all driving privileges of a person when [DOL] receives notice from a court under [former] RCW 46.63.070(6) [(2006)], [former] 46.63.110(6) [(2007)], or [former] 46.64.025 [(2006)] that the person has failed to respond to a notice of traffic infraction, failed to appear at a requested hearing, violated a written promise to appear in court, or has failed to comply with the terms of a notice of traffic infraction or citation.

Former RCW 46.20.289 thus incorporates further statutes by reference, and, as in the case of former RCW 46.20.342(1)(c)(iv), we may not ignore those references—we must presume the legislature included them for a purpose, and determine, as a matter of law, what that purpose was.

Former RCW 46.20.289 plainly requires DOL to suspend a person's driving privileges under certain circumstances—specifically, where DOL receives notice from a court pursuant to one of the enumerated statutes. We therefore must look to the three statutes referenced in former RCW 46.20.289.

Former RCW 46.63.070(6) requires the relevant court to notify DOL if an individual fails to respond to a notice of traffic infraction or failed to appear at a requested hearing. This statute is not relevant to Johnson's situation because, as noted above, he did respond to his citation, and he did appear in court for his requested hearing. Former RCW 46.64.025 requires the relevant court to notify DOL "[w]henever any person served with a traffic citation willfully fails to appear

for a scheduled court hearing." Again, because Johnson did appear for his scheduled hearing, this statute is inapplicable.

Former RCW 46.63.110(6), however, addresses situations in which a person fails to pay a fine imposed by a court, and is directly applicable to Johnson's situation. That statute provides, in relevant[2] part:

> Whenever a monetary penalty, fee, cost, assessment, or other monetary obligation is imposed by a court under this chapter it is immediately payable.
>
> . . . .
>
> (b) If a person has not entered into a payment plan with the court and has not paid the monetary obligation in full on or before the time established for payment, the court shall notify [DOL] of the delinquency. [DOL] shall suspend the person's driver's license or driving privilege until all monetary obligations have been paid, including those imposed under subsections (3) and (4) of this section, or until the person has entered into a payment plan under this section.

RCW 46.63.110(6). If failure to pay the monetary penalty assessed by a court following an unsuccessful challenge to a notice of traffic infraction was not intended to qualify as failure to comply with the notice's terms, the legislature's reference to former RCW 46.63.110(6) in former RCW 46.20.289 would be either entirely superfluous or utterly nonsensical—every single part of former RCW 46.63.110(6) applies only to situations where "a monetary penalty, fee, cost, assessment, or other monetary obligation is imposed *by a court* under this chapter"

---

[2]Other parts of former RCW 46.63.110(6) apply to situations involving payment plans for monetary fines imposed due to a traffic infraction. The face of Johnson's ticket allowed him to avail himself of the trial court's ability to offer payment plans or reduce the fine by responding within 15 days and seeking a mitigation hearing. He did not do so.

(emphasis added); and former RCW 46.20.289 does not reference any other sections of former RCW 46.63.110. We do not interpret statutes in a way that would render any statutory language superfluous or nonsensical and will not do so here. *Bunker*, 169 Wn.2d at 578.

The dissent's discussion of this final, failure-to-comply prong focuses on the statute's plain language, as did the dissent's discussion of the other prongs in former RCW 46.20.342(1)(c)(iv). However, the dissent apparently alters its methodology in analyzing the final prong—in its analyses of the first three prongs, the dissent rightfully considers, both explicitly and implicitly, related statutes to discern plain meaning. However, the dissent's discussion of the final prong focuses solely on a single clause, read in isolation—"'failed to comply with the terms of a notice of traffic infraction or citation'"—rather than considering "'all that the legislature has said in the statute and related statutes.'" Dissent at 2 (quoting former RCW 46.20.342(1)(c)(iv) and *Campbell & Gwinn*, 146 Wn.2d at 11).

Contrary to the dissent's characterization, we do not "string[ ] an additional statute to the tail of former RCW 46.20.342(1)(c)(iv)." Dissent at 4. The legislature is the body that wrote the statute, and the legislature is the body that explicitly incorporated former RCW 46.20.289 in the plain language of RCW 46.20.342(1)(c)(iv). We do not have the option of ignoring that explicit legislative directive.

11

2.     The terms of the notice of traffic infraction

Johnson argues that the terms of the notice of infraction required only that he respond and appear and that he had no duty to pay any fine ordered after the hearing contesting the infraction. Johnson's argument assumes that the terms of the notice of infraction were frozen in time when he initially received the citation. He is incorrect. The face of his notice of infraction allowed the infraction trial court to impose a penalty after any hearing held to contest the notice of infraction or to explain mitigating circumstances. In other words, according to the plain language on the face of the notice of infraction, a person who contests a notice of infraction may eliminate the duty to pay the fine imposed only if he or she succeeds in contesting the infraction. Johnson did not succeed, and the trial court recorded his failure on the face of the ticket in open court. Johnson was present in court and also received notice of the change to the face of the notice of infraction by order. *See* former RCW 46.63.120 (1979).

Johnson also claims that the related statutes providing meaning for the phrase "failed to comply with the terms of a notice of traffic infraction or citation," former RCW 46.20.342(1)(c)(iv), are the code provisions implementing the "Nonresident Violator Compact" (NVC), chapter 46.23 RCW. Under the NVC, "'[c]itation' means any summons, ticket, notice of infraction, or other official

12

document issued by a police officer for a traffic offense containing an order which requires the motorist to respond" and "'[t]erms of the citation' means those options expressly stated upon the citation." RCW 46.23.010 art. II(1), (11). Johnson thus contends that because the notice of infraction did not expressly require him to pay a fine, he has not violated its terms.

Johnson correctly notes that we derive the legislature's intent from related statutes. However, he incorrectly determines that the relevant related statute is the NVC, rather than the statutes explicitly referenced in former RCW 46.20.342(1)(c)(iv). While the NVC defines the phrase "'[t]erms of the citation,'" RCW 46.23.010 art. II(11), it does *not* define the circumstances under which one has "failed to comply with the terms of a notice of traffic infraction or citation," which is the critical phrase for the DWLS 3rd scheme, former RCW 46.20.342(1)(c)(iv). The legislature did, however, define a failure to comply with the terms of a notice of infraction through former RCW 46.20.342(1)(c)(iv)'s incorporation of former RCW 46.20.289 and former RCW 46.63.110(6), as discussed above. These are the relevant related statutes, and they demonstrate that the legislature considered a failure to pay a fine a failure to comply with the terms of a notice of infraction.

3.   The ordinary citizen and obscurity by cross-reference

The dissent contends that "[i]t strains credulity to imagine that an ordinary citizen would read into former RCW 46.20.342(1)(c)(iv) the double incorporation the majority reads into the statutory scheme." Dissent at 6. However, it would strain credulity even further to imagine that a reasonable ordinary citizen would adopt the dissent's interpretation.

Under the dissent's interpretation, where an individual's license is suspended because he or she simply fails to pay the fine indicated on a notice of traffic infraction, and where that individual continues to drive following the resulting suspension, he or she is guilty of DWLS 3rd under former RCW 46.20.342(1)(c)(iv). However, where an individual instead chooses to raise a challenge to the notice of traffic infraction, appears in court to argue that challenge, loses in court, does not pay the fine assessed, and consequently has his or her license suspended, that individual may continue to drive without violating former RCW 46.20.342(1)(c)(iv). We cannot accept that an ordinary citizen would believe he or she would be rewarded in this way for expending judicial resources on an unsuccessful challenge to a notice of infraction.

The dissent further takes issue with the "obscure language" of former RCW 46.20.342(1)(c)(iv), and the fact that we must "follow a trail of statutes to pile one unclear reference upon another to arrive at the definition of the crime." Dissent at

14

8. Former RCW 46.20.342(1)(c)(iv), however, is hardly unique in its requirement that one look to multiple other statutes to discern its meaning, and the fact that it does so neither renders the statute ambiguous nor gives us license to ignore portions of its text.

By way of comparative example, RCW 46.61.520 defines vehicular homicide, in part, as follows:

> (1) When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person . . . if the driver was operating a motor vehicle:
>
> (a) While under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502.

RCW 46.61.502(1), meanwhile, defines driving under the influence of intoxicating liquor or any drug as the situation presented when a

> person drives a vehicle within this state:
>
> (a) And the person has, within two hours after driving, an alcohol concentration of 0.08 or higher as shown by analysis of the person's breath or blood made under RCW 46.61.506; or
>
> (b) The person has, within two hours after driving, a THC concentration of 5.00 or higher as shown by analysis of the person's blood made under RCW 46.61.506; or
>
> (c) While the person is under the influence of or affected by intoxicating liquor, marijuana, or any drug; or
>
> (d) While the person is under the combined influence of or affected by intoxicating liquor, marijuana, and any drug.

RCW 46.61.506, in turn, provides, among other things:

(3) Analysis of the person's blood or breath to be considered valid under the provisions of this section or RCW 46.61.502 or 46.61.504 shall have been performed according to methods approved by the state toxicologist and by an individual possessing a valid permit issued by the state toxicologist for this purpose.

Thus, to determine whether one has committed vehicular homicide pursuant to RCW 46.61.520(1)(a), an individual must first look at that statute, then look to RCW 46.61.502 to determine whether he or she might meet the legal definition of "driving while under the influence," and then look to RCW 46.61.506(3) to determine whether the analysis of that individual's blood or breath was legally sufficient.

Using the analytical framework employed by the dissent here, a defendant charged with vehicular homicide could admit that he or she drove a motor vehicle with an alcohol concentration of 0.09 and admit that he or she injured another person while driving, proximately causing that person's death. Nevertheless, the defendant would still be able to argue that based on his or her own unique physiology and alcohol tolerance, the defendant was not "under the influence" of alcohol. It would not matter that RCW 46.61.502(1)(a) plainly defines any alcohol concentration above 0.08 as per se sufficient to establish an individual was driving "under the influence" because the meaning of that term, as used in RCW 46.61.520(1)(a), is obscured by cross-references, and so must be interpreted

literally and read in isolation. We will not employ an analytic framework that could lead to such absurd results.

The plain meaning of former RCW 46.20.342(1)(c)(iv) unambiguously supports the State's contention that "fail[ure] to comply with the terms of a notice of traffic infraction" includes the failure to pay monetary penalties imposed by a court following an unsuccessful challenge to the notice of traffic infraction. We reject the interpretations of former RCW 46.20.342(1)(c)(iv) proffered by Johnson and by the dissent.

B.    Johnson is not constitutionally indigent and lacks standing to make his constitutional challenge to the suspension of his license

Johnson also challenges his conviction on constitutional grounds. He argues that the underlying suspension of his license was invalid under the Fourteenth Amendment to the United States Constitution and that an invalid suspension cannot support his DWLS 3rd conviction, citing *State v. Dolson*, 138 Wn.2d 773, 777, 982 P.2d 100 (1999).[3] The State contends that Johnson lacks standing to contest the underlying suspension of his license on this basis, and we agree.

To prove he has standing, Johnson must satisfy both prongs of our two pronged test. *Branson v. Port of Seattle*, 152 Wn.2d 862, 876, 101 P.3d 67 (2004).

---

[3]The Fourteenth Amendment to the United States Constitution provides, in relevant part, "No state shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

First, Johnson must show "a personal injury fairly traceable to the challenged conduct and likely to be redressed by the requested relief." *High Tide Seafoods v. State*, 106 Wn.2d 695, 702, 725 P.2d 411 (1986). Second, Johnson must show that his claim falls within the zone of interests protected by the statute or constitutional provision at issue. *Branson*, 152 Wn.2d at 875. Where a party lacks standing for a claim, we refrain from reaching the merits of that claim. *Org. to Preserve Agric. Lands v. Adams County*, 128 Wn.2d 869, 896, 913 P.2d 793 (1996).

The Fourteenth Amendment's equal protection and due process clauses work together to restrict a state's ability to imprison indigent defendants for failure to pay fines. *Bearden v. Georgia*, 461 U.S. 660, 665, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983); *Tate v. Short*, 401 U.S. 395, 396, 91 S. Ct. 668, 28 L. Ed. 2d 130 (1971); *Williams v. Illinois*, 399 U.S. 235, 236, 90 S. Ct. 2018, 26 L. Ed. 2d 586 (1970). The Supreme Court of the United States has held that the due process and equal protection clauses prevent a state from invidiously discriminating against, or arbitrarily punishing, indigent defendants for their failure to pay fines they cannot pay. *Bearden*, 461 U.S. at 665. Therefore, a trial court must inquire as to a defendant's ability to pay before imprisoning the defendant in order to ensure the failure to pay is contumacious—that is, stubbornly disobedient—and not due solely to a lack of means. *Id.* at 668-69.

18

Johnson contends that our decision in *State v. Blank*, 131 Wn.2d 230, 239, 245, 930 P.2d 1213 (1997), extended *Bearden*, *Tate*, and *Williams* beyond an indigent's physical liberty, and that any State sanction imposed for failure to pay a fine without a showing that the nonpayment was contumacious is a constitutional violation. He therefore contends the suspension of his license for nonpayment, which apparently occurred without inquiry into his ability to pay, was a constitutional violation. If he is indigent and correctly reading *Blank*, such a constitutional violation would satisfy both the injury-in-fact and the zone of interests standing tests. *See* 1 LAURENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW 446 (3d ed. 2000).

However, a constitutional violation under *Blank* occurs only where the State sanctions an *indigent* individual without demonstrating contumacious failure to pay. *Tate*, 401 U.S. at 400 ("We emphasize that our holding today does not suggest any constitutional infirmity in imprisonment of a defendant with the means to pay a fine who refuses or neglects to do so."); *People v. Lewis*, 19 Cal. App. 3d 1019, 97 Cal. Rptr. 419, 421 (Dist. Ct. App. 1971). If Johnson is not indigent within the meaning of *Bearden* and *Blank*—constitutionally indigent—then no constitutional violation has occurred and Johnson lacks standing because he has not suffered an injury.

No precise definition of "constitutional indigence exists." In *Williams*, the Supreme Court spoke of indigence as meaning "without funds." 399 U.S. at 242. Nonetheless, courts have recognized that constitutional indigence cannot mean absolute destitution. *Lewis*, 97 Cal. Rptr. at 421. At the same time, a constitutional distinction exists between poverty and indigence, and constitutional protection attaches only to indigence. *See, e.g., Fuller v. Oregon*, 417 U.S. 40, 53, 94 S. Ct. 2116, 40 L. Ed. 2d 642 (1974).[4] *Bearden* essentially mandates that we examine the totality of the defendant's financial circumstances to determine whether he or she is constitutionally indigent in the face of a particular fine. 461 U.S. at 661-62, 666 n.8 ("The more appropriate question is whether consideration of a defendant's financial background in setting or resetting a sentence is so arbitrary or unfair as to be a denial of due process.").

At least one court has stated that whatever the definition of "constitutional indigence," those claiming indigence in the face of traffic fines cannot satisfy the definition. "In traffic cases, it is difficult to find an inability to pay when a defendant owns an automobile and seemingly has money to buy gasoline or has the ability to borrow." *State ex rel. Pedersen v. Blessinger*, 56 Wis. 2d 286, 295, 201

---

[4] We live in a society where the distribution of legal assistance, like the distribution of all goods and services, is generally regulated by the dynamics of private enterprise. A defendant in a criminal case who is just above the line separating the indigent from the nonindigent must borrow money, sell off his meager assets, or call upon his family or friends in order to hire a lawyer. *Fuller*, 417 U.S. at 53.

N.W.2d 778 (1972). We find no need to make such a categorical statement here because we find Johnson's assets leave him unable to claim he is constitutionally indigent.

Ownership of, or equity in, property indicates that a defendant is not constitutionally indigent and that his or her failure to pay a fine is contumacious. *See, e.g., Bearden*, 461 U.S. 662 (Bearden was indigent because he lacked assets); *Lewis*, 97 Cal. Rptr. at 421 (making ownership of tangible or intangible property one measure of the defendant's ability to pay); *People v. McArdle*, 55 N.Y.2d 639, 430 N.E.2d 1309, 1310, 446 N.Y.S.2d 256 (1981) ("There is no constitutional infirmity in defendant's imprisonment for failure to pay the fine, for her equity in the property establishes that she has the means to pay it though she has so far refused to do so."); *State v. Williams*, 562 So. 2d 965, 969 (La. Ct. App. 1990) ("[T]here is evidence in the record that the defendant owns immovable property in Breaux Bridge, La. We find the record does not support defendant's claim of indigency."). Property ownership allows the defendant to "borrow money or otherwise legally acquire resources in order to pay his court-ordered financial obligation" to pay his or her debt to society. *State v. Bowers*, 64 Wn. App. 227, 231-32, 823 P.2d 1171 (1992).

While Johnson claims standing based on his statutory indigence, his statutory indigence does not answer the question of whether he is constitutionally

21

indigent within the meaning of *Bearden* and *Blank*. *See In re Smith*, 323 F. Supp. 1082, 1091 (D. Colo. 1971) (noting that statutory indigence is different from constitutional indigence). The trial record shows that Johnson is not. During an exchange with the district court, Johnson acknowledged he owned both tangible and intangible property. *Lewis*, 19 Cal. Rptr. at 422. He stated that he owned, among other things (such as his car), his home, free of any liens. He stated that he valued the property at $300,000. He also acknowledged possessing a $3 million judgment against his neighbor. We agree with Johnson that under the totality of the circumstances, it is unreasonable to consider the $3 million judgment as an asset given the unlikelihood that he would ever collect any part of it. However, his equity in his home would have allowed Johnson to "borrow or otherwise legally acquire resources" necessary to pay the $260 fine. *Bowers*, 64 Wn. App. at 231-32.

Considering the totality of the circumstances, we hold that Johnson was not constitutionally indigent. While we do not question that the State may not punish an indigent defendant for the fact of his or her indigence, these constitutional considerations protect only the constitutionally indigent. Johnson had substantial assets in comparison to the $260 fine the district court ordered him to pay. Requiring payment of the fine may have imposed a hardship on him, but not such a hardship that the constitution forbids it. *Lewis*, 19 Cal. Rptr. at 422 (the constitution does not require the trial court to allow a defendant the same standard

of living that he had become accustomed). Johnson is not constitutionally indigent and lacks standing for his claim. We decline to reach it.

C.    The district court improperly determined that Johnson was not entitled to appointed counsel

Finally, Johnson argues his constitutional right to counsel was violated because the district court refused to appoint counsel for his appeal. The right to counsel requires courts to appoint counsel for indigent defendants for criminal trials as well as for appeals of right. *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963); *Douglas v. California*, 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963). There is no constitutional right to appointed counsel for discretionary appeals. *Ross v. Moffitt*, 417 U.S. 600, 94 S. Ct. 2437, 41 L. Ed. 2d 341 (1974).

Washington State has, however, expanded by statute the right to appointed appellate counsel beyond the minimum required by the United States Constitution. A defendant defined as statutorily indigent may receive appointed counsel for criminal trials and appointed appellate counsel under certain circumstances, such as when an appellate court accepts a motion for discretionary review, as happened here. RCW 10.73.150(6). A person may avail himself or herself of this statutory right to appointed appellate counsel if he or she is (1) indigent or (2) indigent and able to contribute. RCW 10.73.150.

23

RCW 10.101.010(3) defines a person as "'[i]ndigent'" for the purposes of receiving appointed counsel if he or she satisfies at least one of four disjunctive criteria at any stage of a legal proceeding. Receipt of food stamps satisfies one of these criteria; earning less than 125 percent of the federal poverty level in income satisfies another. RCW 10.101.010(3)(a), (c).

By the plain terms of RCW 10.101.010(3), Johnson was statutorily indigent. Johnson satisfied two of the criteria for statutory indigence under RCW 10.101.010(3)—there is no dispute that he received food stamps and that he earned less than 125 percent of the federal poverty level. Either was sufficient to require the district court to find him indigent within the meaning of Washington's appointed counsel statute. *State v. Hecht*, 173 Wn.2d 92, 94-95, 264 P.3d 801 (2011). The district court erred when it found Johnson not indigent.

However, the district court appears to have determined that Johnson was indigent and able to contribute. A person is "'[i]ndigent and able to contribute'" if he or she is "unable to pay the anticipated cost of counsel for the matter before the court because his or her available funds are less than the anticipated cost of counsel but sufficient for the person to pay a portion of that cost." RCW 10.101.010(4). The district court denied Johnson status as an indigent after Johnson admitted to owning a house free of liens. Equity in real estate makes up part of a person's available funds. RCW 10.101.010(2). To the extent that his equity in his home

24

enabled Johnson to pay for some of the costs of his defense, it makes him indigent and able to contribute. RCW 10.101.010(4).

Johnson challenges the district court's ability to inquire as to his indigence at all, claiming it had already determined he was indigent. Johnson cites RCW 10.101.020(3), which requires the trial court to determine his indigence "upon the defendant's initial contact with the court, or at the earliest time circumstances permit," and claims that this provision does not allow the trial court to reexamine an order of indigency. However, RCW 10.101.020(3) merely requires the trial court to make an initial determination of indigency; it does not preclude the court from later reevaluating its initial determination. Indeed, both statute and court rule provide the court with the implicit or explicit authority to perform this reevaluation. RAP 15.2(b) provides, "The determination [of indigency] shall be made in written findings after a hearing, if circumstances warrant, or by reevaluating any order of indigency previously entered by the trial court"; and RCW 10.101.020(4) provides, "If the court subsequently determines that the person receiving services is ineligible," then the court should terminate the appointment of counsel. The district court had the power to inquire of Johnson's financial status to evaluate if the initial determination of indigency remained appropriate later in the proceedings.

Johnson also argues the district court deprived him of due process when it reconsidered his indigent status, contending he had no "meaningful notice or opportunity to be heard." Pet'r's Opening Br. at 43. Johnson does not elaborate on this sentence at all. Where a petitioner makes a due process challenge, "'[N]aked castings into the constitutional seas are not sufficient to command judicial consideration and discussion.'" *State v. Blilie*, 132 Wn.2d 484, 493 n.2, 939 P.2d 691 (1997) (alteration in original) (internal quotation marks omitted) (quoting *In re Rosier*, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986)). Johnson's lack of argument waives consideration of his due process argument.

We remand to the district court for clarification as to whether Johnson is indigent or indigent and able to contribute. If the district court determines that Johnson was indigent and able to contribute, it must enter an order determining the portions of Johnson's defense for which he must pay. *See Hecht*, 173 Wn.2d at 95, 96; RAP 15.4.

## IV. CONCLUSION

We reject Johnson's argument that the State failed to prove that his license suspension occurred for one of the reasons listed in former RCW 46.20.342(1)(c)(iv). The plain meaning of the statute contemplates a DWLS 3rd charge where the underlying suspension occurs for failure to pay a traffic fine. We reject Johnson's contention that he is constitutionally indigent, and therefore

decline to reach the merits of his constitutional challenge to the suspension of his license.

We do, however, agree that Johnson is statutorily indigent because he receives food stamps and his income is less than 125 percent of the federal poverty level. The district court erred in finding otherwise. We remand to the district court to determine whether Johnson is indigent or indigent and able to contribute, and direct it to enter the appropriate order.

Fairhurst, J.

WE CONCUR:

Madsen, C.J.

Stephens, J.

Owens, J.

González, J.

28

No. 86885-9

WIGGINS, J. (dissenting)—I agree with the majority's holdings that (1) petitioner Stephen Chriss Johnson is statutorily indigent, but not constitutionally indigent; (2) Johnson lacks standing to challenge the constitutionally of his license suspension; and (3) the case should be remanded to decide whether he should bear any or all costs and attorney fees for his appeal. But, I respectfully disagree with the finding that Johnson was guilty of driving with license suspended in the third degree (DWLS 3d) and, accordingly, must dissent.

To place this case in context, in 1979, the legislature decriminalized moving traffic violations, making them civil infractions. LAWS OF 1979, 1st Ex. Sess., ch. 136. Accordingly, "[a]n order entered after the receipt of a response which does not contest the determination, or after it has been established at a hearing that the infraction was committed, or after a hearing for the purpose of explaining mitigating circumstances is civil in nature." RCW 46.63.120(1). In other words, an order determining there has been an infraction is a civil order.

As the majority explains, the legislature has decided to criminalize certain aspects of traffic infractions. Former RCW 46.20.342(1) (2008) makes it "unlawful for any person to drive a motor vehicle in this state while that person is in a suspended or revoked status or when his or her privilege to drive is suspended or revoked in this or any other state." DWLS 1st, 2d, and 3d each arise under very specific conditions. Former RCW 46.20.342(1)(a), (b), (c). DWLS 3d is committed under circumstances defined in seven subsections. Former RCW 46.20.342(1)(c)(i)-

1

(vii) (2008). Johnson was convicted under section .342(1)(c)(iv), which defines DWLS 3d to include driving with license suspended or revoked because

> the person has failed to respond to a notice of traffic infraction, failed to appear at a requested hearing, violated a written promise to appear in court, or has failed to comply with the terms of a notice of traffic infraction or citation, as provided in [former] RCW 46.20.289 [(2005)] . . . .

To properly understand this statute, we look for its plain meaning, "discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Dep't of Ecology v. Campbell & Gwinn, LLC,* 146 Wn.2d 1, 11, 43 P.3d 4 (2002).

Johnson is not guilty of the first prong of former RCW 46.20.342(1)(c)(iv) because he did not "fail[ ] to respond to a notice of traffic infraction . . . ." The legislature has defined what it means to fail to respond to a notice of infraction: "A notice of traffic infraction represents a determination that an infraction has been committed. The determination will be final unless contested as provided in this chapter." RCW 46.63.060(1). The notice must conform to the form prescribed by this court and must include "[a] statement of the options provided in this chapter for responding to the notice and the procedures necessary to exercise these options . . . ." RCW 46.63.060(2)(e). A cited person may respond in one of three ways:

- o The cited person may respond to the court named on the notice of infraction that it is not contested and pay the fine stated on the citation. RCW 46.63.070(2).

2

    o The cited person may contest the infraction by notifying the court and requesting a hearing. *Id.* at .070(3).

    o The cited person may notify the court of a request for a hearing to present mitigating circumstances. *Id.* at .070(4).

These are the only three permissible responses to the notice of infraction.

The notice of infraction to Johnson clearly listed these three options. Ex. 2. Johnson chose the second option and requested a hearing to contest the infraction. He is not guilty under the first prong.

Nor is Johnson guilty of the second prong of former RCW 46.20.342(1)(c)(iv) because he did not "fail[ ] to appear at a requested hearing . . . ." Rather, he appeared at the hearing.

Nor is Johnson guilty of the third prong of former RCW 46.20.342(1)(c)(iv) because he did not "violate[ ] a written promise to appear in court . . . ." He indisputably appeared in court.

Failing to find a violation of any of these three prongs, the majority seizes upon the fourth prong of former RCW 46.20.342(1)(c)(iv), concluding that Johnson "failed to comply with the terms of a notice of traffic infraction or citation as provided in [former] RCW 46.20.289 . . . ." The majority writes, "[I]n failing to pay the fine imposed when the infraction trial court rejected Johnson's challenge, Johnson failed to comply with the notice of infraction." Majority at 7. I respectfully disagree. There is no "term" on the notice of infraction requiring Johnson to pay the fine imposed by the judge. The only "term" on the notice that refers to fine payment is the option to

3

simply pay the fine on the citation and avoid any court appearance as set forth in RCW 46.63.070(2). But Johnson chose the option of appearing and contesting the infraction, so the option of avoiding the hearing by paying the fine does not apply to him.

The notice of infraction includes a section in which the district court circled somewhat cryptic abbreviations and wrote that the penalty is $260. Ex. 2. This section is labeled "Abstract of Judgment." It is not an order that Johnson pay the money. Moreover, exhibit 2 is specifically labeled "Court Copy." In short, Johnson did not fail to comply with any term of the infraction.

The majority concludes that Johnson must have violated a term of the infraction, arriving at its conclusion by stringing an additional statute to the tail of former RCW 46.20.342(1)(c)(iv) and stringing yet three more statutes to the second statute. Majority at 6-10. The majority proceeds in several steps. First, the majority observes that after listing the four prongs for finding DWLS 3d under former RCW 46.20.342(1)(c)(iv), the subsection concludes with the phrase "as provided in RCW 46.20.289":

> the person has failed to respond to a notice of traffic infraction, failed to appear at a requested hearing, violated a written promise to appear in court, or has failed to comply with the terms of a notice of traffic infraction or citation, *as provided in [former] RCW 46.20.289* . . . .

(Emphasis added.) Second, the majority reasons that this incorporation or cross-reference clarifies and adds meaning to the four prongs under section .342(1)(c)(iv). Majority at 8.

4

Third, the majority observes that former RCW 46.20.289 cites to three additional statutes:

> "[DOL] shall suspend all driving privileges of a person when the department receives notice from a court under [former] RCW 46.63.070(6) [(2006)], [former] 46.63.110(6) [(2007)], or [former] 46.64.025 [(2006)] that the person has failed to respond to a notice of traffic infraction, failed to appear at a requested hearing, violated a written promise to appear in court, or has failed to comply with the terms of a notice of traffic infraction or citation, other than for a standing, stopping, or parking violation, provided that the traffic infraction or traffic offense is committed on or after July 1, 2005."

Majority at 9 (quoting former RCW 46.20.289). Fourth, the majority reasons that each of the three statutes referenced in former RCW 46.20.289 defines one or two of the four prongs in former RCW 46.20.342(1)(c)(iv)—the statute referenced at the outset. Majority at 9-10.

This serial incorporation is obscure, to say the least. Each of these statutes governs a different aspect of the regulation of driving privileges. Former RCW 46.63.070(6), 46.63.110(6), and 46.64.025 tell the court to notify Department of Licensing (DOL) in very specific situations. Former RCW 46.20.289 tells DOL to suspend driving privileges upon notification. Former RCW 46.20.342(1)(c)(iv) tells the court to convict a person of DWLS 3d for driving with license suspended for specific reasons. Nothing in the statutes indicates that the legislature intended that they be read serially in this manner. The majority's approach contrasts starkly with the specificity with which the legislature regulated driving privileges in these statutes. If the legislature had intended that a driver be guilty of DWLS 3d for driving after

5

driving privileges were suspended for failure to pay a fine or penalty, surely the legislature would have said so.

Criminal statutes must be construed in the manner in which an ordinary citizen would understand their terms. *State v. Shipp*, 93 Wn.2d 510, 515-16, 610 P.2d 1322 (1980) (citing *Winters v. New York,* 333 U.S. 507, 515, 68 S. Ct. 665, 92 L. Ed. 840 (1948); *City of Seattle v. Pullman,* 82 Wn.2d 794, 797, 514 P.2d 1059 (1973)). It strains credulity to imagine that an ordinary citizen would read into former RCW 46.20.342(1)(c)(iv) the double incorporation the majority reads into the statutory scheme.

The majority argues that my interpretation of the statutory scheme renders "the legislature's reference to former RCW 46.63.110(6) in former RCW 46.20.289 . . . . either entirely superfluous or utterly nonsensical . . . ." Majority at 10. Not at all. One option for responding to a notice of infraction is to respond that one is enclosing a check for the fine shown on the notice. A cited person who checks the appropriate box but fails to enclose the check has "responded" to the notice of infraction, but they have failed to comply with the terms of the notice. Former RCW 46.63.110(6) would govern this situation. Accordingly, the reference to former section .110(6) is neither superfluous or nonsensical.

The majority offers as a "comparative example" RCW 46.61.520, which defines vehicular homicide to include operating a motor vehicle under the influence of intoxicating liquor or any drug "'*as defined by RCW 46.61.502 . . . .*'" Majority at 15 (emphasis added) (quoting RCW 46.61.502). This case would be comparable if

6

RCW 46.20.342(1)(c) provided that a person may be guilty of DWLS 3d by driving with a license suspended for failure to comply with the terms of a notice of traffic infraction, *defined under RCW 46.63.110(6)* as grounds for suspension of the person's driver's license or driver's privilege. But of course there is no such language in either section .342(1)(c) or section .110(6).

Even if it were permissible to read into former RCW 46.20.342(1)(c)(iv) the double incorporation of statutes on which the majority relies, the majority's reasoning still collapses. The majority reasons: former RCW 46.20.342(1)(c)(iv) defines DWLS 3d to include failure "to comply with the terms of a notice of traffic infraction or citation, as provided in [former] RCW 46.20.289"; [former] RCW 46.20.289 incorporates [former] RCW 46.63.110(6); [former] RCW 46.63.110(6)(b) provides that the DOL must suspend driving privileges for failure to pay monetary penalties; therefore, failure to comply with the terms of a notice of traffic infraction or citation must include failure to pay monetary penalties. This logic depends on tying the failure to pay monetary penalties back to a term of a notice of traffic infraction. As noted earlier in this dissent, the only term in the notice of infraction requiring payment of a monetary penalty is one of the three response options: instead of contesting the infraction, the driver may send payment to the court for the amount of the penalty stated on the notice. Accordingly, even if failure "to comply with the terms" includes failure to pay, it can refer only to the option of paying the stated penalty instead of going to court to contest the notice. But Johnson cannot be guilty

7

of violating this alternative because he complied instead with the alternative of appearing in court to contest the violation.

Former RCW 46.20.342(1)(c)(iv) defines a crime. We cannot require citizens to puzzle out the meaning of obscure language in a statute and to follow a trail of statutes to pile one unclear reference upon another to arrive at the definition of the crime. Johnson complied with the terms of the statutory language. I cannot find that the crime is defined by cross-references directed at the DOL.

Accordingly, I respectfully dissent.