**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| GENEVA LANGWORTHY,<br><br>                Appellant,<br><br>     v.<br><br>KRISTINA POLLARD and the<br>ALTERNATIVE HUMANE SOCIETY,<br><br>               Respondents. | No. 83717-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

PER CURIAM — Geneva Langworthy appeals from an order denying her motion for a preliminary injunction. Because Langworthy does not establish an entitlement to relief, we affirm.

I

In August 2021, Langworthy initiated this lawsuit against the Alternative Humane Society (AHS) and Kristina Pollard in Whatcom County Superior Court. In her complaint, Langworthy alleged that "[o]n or about July 25, 2021, . . . Pollard and [AHS] began publishing (by posting in public places) a defamatory poster falsely declaring that . . . Langworthy is a 'dangerous person' and that her dogs 'attack on command.'" Langworthy alleged the poster "calls for the public to call 9-1-1 and report her as a dangerous person," and that the poster "publishes photographs of Ms. Langworthy taken without her permission on private property, and published without her written authorization."

In November 2021, Langworthy filed a motion for a preliminary injunction

requiring Pollard and AHS to remove the poster from public spaces. Langworthy premised her motion entirely on an alleged violation of chapter 63.60 RCW (Washington personality rights act, or WPRA), which, as relevant here, recognizes in "[e]very individual . . . a property right in the use of his or her name . . . [and] photograph" and sets forth remedies for infringement of that right. RCW 63.60.010, .060. Specifically, Langworthy argued that the posters "unlawfully utilize her personality rights" and requested "immediate compensation for the unauthorized use of her name and photograph" in the total amount of $4,500, i.e., $1,500 for each of three alleged violations. See RCW 63.60.060(2) ("Any person who infringes the rights under this chapter shall be liable for the greater of one thousand five hundred dollars or the actual damages sustained as a result of the infringement.").

Pollard opposed Langworthy's motion for injunctive relief, arguing that the WPRA did not apply because the poster at issue did not enter the stream of commerce and was not used to advertise, fundraise, or solicit donations.

Langworthy's motion came before the trial court for a Zoom hearing on February 4, 2022. By that time, all four Whatcom County Superior Court judges had recused from the matter, so a visiting Snohomish County judge heard the motion.

At the outset of the hearing, the trial court indicated it was ready to hear "Ms. Langworthy's motion for a preliminary injunction." At that point, Langworthy stated that she "thought [she] had also noted [a] motion to amend [her] complaint" for the hearing. The court responded that "[t]he one that I have for the note for the motion

2

docket at this time that I got was for the preliminary injunction," and AHS's counsel confirmed that was his understanding as well.

Langworthy then proceeded to argue her motion. During Langworthy's argument, the trial court posed a number of questions, including, "What's the value of your personality," whether "the FBI or the state can't put up a wanted poster for somebody" without violating that person's rights under the WPRA, and "What is the exploitative purpose on this?" When Langworthy asserted that "[i]t's also illegal to take a photograph of someone on private property without their permission" and "[y]ou can take a photograph of someone on public property without their permission, but you can't publish it without their permission," the trial court asked, "Do you have any citations or case law on that?"

After Langworthy completed her argument, Pollard again argued, through counsel, that the WPRA was inapplicable because "this is not an advertisement under the classic sense of the word advertisement," and "this is not a situation where an advertising agency is using Ms. Langworthy's likeness for the purpose of selling a good or a product." Following Pollard's argument, the trial court denied Langworthy's motion.

Langworthy appeals.[1, 2]

---

[1] Langworthy initiated this appeal by filing a notice for discretionary review. After Langworthy indicated that she had filed a notice of voluntary dismissal in the trial court, a commissioner ruled that the matter could proceed as an appeal, anticipating that the trial court would enter a final order dismissing Langworthy's claims. The commissioner's ruling was "without prejudice to the ability of any party to file a motion to determine appealability if the proceedings in the superior court are ongoing." Although it does not appear that the trial court has entered a final order, none of the parties has further addressed the issue of appealability. Thus, neither do we.

[2] In its respondent's brief, AHS argues that Langworthy's notice of voluntary dismissal mooted her appeal. We are not persuaded that Langworthy's appeal is moot. Thus, we reach the merits.

II

Langworthy premised her motion for a preliminary injunction entirely on her assertion that the use of her photos on the posters at issue, without her consent, violated the WPRA.  But as Pollard pointed out below, a person violates the WPRA by using a person's photograph without consent only when the person uses the photograph "on or in goods, merchandise, or products entered into commerce in this state, or for purposes of advertising products, merchandise, goods, or services, or for purposes of fund-raising or solicitation of donations," or when the person "publishes such advertisements in this state."  RCW 63.60.050; cf. RCW 63.60.070(1) (exempting, from the WPRA's coverage, "the use of a . . . photograph . . . in connection with matters of cultural, historical, political, religious, educational, newsworthy, or public interest").  Langworthy does not address this aspect of the WPRA in her opening brief, much less point to any evidence that the posters at issue were placed "on or in goods, merchandise, or products entered into commerce."  Nor does she point to any evidence that the posters had the purpose of "advertising products, merchandise, goods, or services" or "fund-raising or solicitation of donations."  So, she fails to establish that the trial court erred inasmuch as it determined that the WPRA did not apply, and she also fails to establish that the trial court abused its discretion by denying a preliminary injunction premised entirely on alleged WPRA violations.  Cf. Rabon v. City of Seattle, 135 Wn.2d 278, 284, 957 P.2d 621 (1998) (grant or denial of a preliminary injunction is reviewed for abuse of discretion, and party seeking injunction must show a well-grounded fear of immediate invasion of a clear legal or equitable right).

III

Instead of addressing the standards for a preliminary injunction or whether the trial court had a legal basis for denying her motion, Langworthy's opening brief focuses entirely on the manner in which the trial court conducted the hearing thereon.[3]  But Langworthy's arguments in support of reversal are not persuasive.

Langworthy first contends that the trial court violated the appearance of fairness doctrine by using a recused judge's Zoom link to conduct the hearing.  But we presume that a trial court performed its functions regularly and properly without bias or prejudice.  Hickok-Knight v. Wal-Mart Stores, Inc., 170 Wn. App. 279, 318, 284 P.3d 749 (2012).  Langworthy's conclusory assertions that "[t]he visiting judge could not have used [the recused judge's] zoom link and virtual courtroom without communicating with [the recused judge]" and that this "was a set-up to screw Langworthy," do not overcome this presumption.  See In re Pers. Restraint of Davis, 152 Wn.2d 647, 692, 101 P.3d 1 (2004) ("The party seeking to overcome th[e] presumption [that a trial judge properly discharged his/her official duties without bias or prejudice] must provide specific facts establishing bias.").

In further support of her appearance of fairness claim, Langworthy asserts that the trial court "acted on behalf of [Pollard]," by "jumping right in and challenging Ms. Langworthy as if she was engaged on behalf of the Defendants" and "aggressively and discriminatorily suggest[ing] that Ms. Langworthy was not entitled

---

[3] On September 6, 2022, well after her opening brief became due, Langworthy filed an "AMENDED AND SUPPLEMENTAL APPELLANT BRIEF" in which she purported to "amend[ ] and supplement[ ] her Opening Brief" with additional argument.  But Langworthy did not obtain leave from this court to file a supplemental opening brief, and to the extent Langworthy intended this brief as her reply brief, "we will not consider arguments raised for the first time in a reply brief."  Basin Paving Co. v. Contractors Bonding & Ins. Co., 123 Wn. App. 410, 415, 98 P.3d 109 (2004).

to the protection of the [WPRA], because her personality was worthless."

But "'[e]vidence of a judge's actual or potential bias must be shown before an appearance of fairness claim will succeed.'" State v. Gamble, 168 Wn.2d 161, 187-88, 225 P.3d 973 (2010) (quoting State v. Chamberlin, 161 Wn.2d 30, 37, 162 P.3d 389 (2007)). Here, the trial court did not act on behalf of any party. Instead, the trial court's questioning during the hearing reflects an impartial effort to resolve a dispute between the parties as to whether the WPRA applied to the posters at issue. So, too, did the trial court's analogizing the poster to an FBI "wanted" poster and asking whether that would fall within the WPRA's scope. Langworthy asserts that the trial court exhibited bias inasmuch as its questioning and its analogy was premised on an erroneous interpretation of the WPRA. But as already discussed, Langworthy fails to establish that the trial court erred inasmuch as it determined that the WPRA did not apply to the posters at issue. In any event, even if the trial court's view of the law were mistaken, that alone is not enough to establish bias. See Davis, 152 Wn.2d at 692 ("Judicial rulings alone almost never constitute a valid showing of bias."). Langworthy's claim that the trial court's manner of questioning violated the appearance of fairness doctrine fails, as does her assertion, which she does not support with any analysis or authority, that the trial court's questioning deprived her of equal protection. Cf. Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) (this court will not consider an inadequately briefed argument).

Langworthy's argument that the trial court denied her due process and equal protection when it declined to consider the motion to amend her complaint

6

also fails.  Langworthy asserts in conclusory fashion that the trial court "should have asked a clerk to double check what was noted for that date, instead of asking the Opposition," and "discriminatorily and retaliatorily denied [her] due process."  But she provides no legal analysis or citations to authority to persuade us that the trial court violated the constitution, and "'[n]aked castings into the constitutional seas are not sufficient to command judicial consideration and discussion.'"  Pub. Hosp. Dist. No. 1 v. Univ. of Wash., 182 Wn. App. 34, 49, 327 P.3d 1281 (2014) (internal quotation marks omitted) (quoting State v. Johnson, 179 Wn.2d 534, 558, 315 P.3d 1090 (2014)).  Furthermore, Langworthy does not explain how the decision not to hear the motion to amend her complaint prejudiced her with regard to the only decision at issue in this appeal—i.e., the trial court's decision to deny Langworthy's motion for a preliminary injunction.  Cf. Thomas v. French, 99 Wn.2d 95, 104, 659 P.2d 1097 (1983) ("[E]rror without prejudice is not grounds for reversal.").

Langworthy next contends that the trial court "proved that [it] didn't read Ms. Langworthy's pleadings, by saying that [it] saw no authority for the fact that personality rights are protected whether or not there is a commercial incentive."  This is so, Langworthy asserts, because "[t]he statutory authority was in [her] motion."  But Langworthy mischaracterizes the record.  The trial court's question to Langworthy about whether she had any citations or case law was directed at Langworthy's assertions that "[i]t's . . . illegal to take a photograph of someone on private property without their permission" and that "[y]ou can take a photograph of someone on public property without their permission, but you can't publish it

7

without their permission." While Langworthy cited various provisions of the WPRA in her motion, she cited no authority for her assertions with regard to where a photograph can and cannot be taken. Also, while the trial court did ask at another point in the hearing about a statute Langworthy cited in her brief, the trial court's inability to specifically recall each authority cited in Langworthy's brief does not establish that the trial court did not read it.

In further support of her assertion that the trial court did not read her materials, Langworthy points to an appendix that she claims proves the trial court was mistaken when it indicated that the only matter noted for the February 4, 2022 hearing was Langworthy's motion for a preliminary injunction. But "[a]n appendix may not include materials not contained in the record on review without permission from the appellate court." RAP 10.3(a)(8). We do not consider the appendix. And we conclude that even if the trial court's failure to read Langworthy's materials were a basis for reversal, Langworthy does not persuade us that the trial court so failed.

Finally, Langworthy asserts that "[a] visiting judge should have been selected from a neighboring county, which would be Skagit, San Juan or Okanogan." She also asserts that the selection was flawed because it "was not random or impartial" as evidenced by the fact that the same visiting judge "was tapped to hear another of Ms. Langworthy's cases." But she cites no authority to support her assertion that the visiting judge was required to be from a neighboring county or that the selection was required to be at random. She also points to nothing in the record to support her claim that the visiting judge was

8

"'cherry picked'" by Whatcom County Superior Court as an act of retaliation.

We affirm.

Duyn, J.

Díaz, J.

Chung, J.