FILED
10/18/2021
Court of Appeals
Division I
State of Washington

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| JOSHUA C. SMITH, | ) | No. 80485-5-I |
| | ) | consolidated with |
| Respondent, | ) | No. 81726-4-I |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| DEPARTMENT OF LICENSING, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |
| MATTHEW B. DYSON, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | PUBLISHED OPINION |
| DEPARTMENT OF LICENSING, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

VERELLEN, J. — The Department of Licensing obtains jurisdiction over a person's implied consent license suspension or revocation only after it receives the required sworn report from a law enforcement officer. Because the department lacks authority to conduct any hearing until that time, the statutory deadline for the department to hold a hearing commences only when the department receives both the sworn report and a timely hearing request from the motorist.

Joshua Smith and Matthew Dyson argue that because the department did not hold a hearing within the timeline provided in the implied consent statute, RCW 46.20.308(7), the suspensions and revocations imposed are invalid. They contend the time to hold a hearing is calculated from the date the department received their timely hearing requests regardless of whether it received an officer's sworn report. Because the department lacked the authority to hold hearings on their cases without a sworn report, once the department received sworn reports about Smith and Dyson, it scheduled and held hearings. Because the department held timely hearings as calculated from the date it obtained jurisdiction over their cases, it had the authority to enforce the implied consent statute by suspending and revoking Smith's and Dyson's licenses.

Therefore, we reverse the RALJ court as to Smith and affirm as to Dyson.

## FACTS

This case involves two different motorists, Smith and Dyson, who both refused to submit to breath tests, were arrested on suspicion of driving under the influence (DUI), and had their driving privileges suspended or revoked by the department pursuant to the implied consent statute, RCW 46.20.308. The facts are undisputed.

### Joshua Smith

On June 15, 2018, Washington State Patrol Trooper D.A. Black pulled over a speeding car. Smith said he on his way home after having "not too much" to

drink.[1]  Smith smelled of alcohol, was slurring his speech, and was unaware he was driving 25 miles per hour above the speed limit.  Trooper Black advised Smith of his constitutional rights, his right to refuse a breath test, and the consequences of refusing.  Smith refused to submit to the breath test or to any field sobriety tests.  Trooper Black provided Smith a Department of Licensing "Request for DUI Hearing" form.  Trooper Black arrested Smith on suspicion of DUI and obtained a warrant to draw his blood.  That day, Trooper Black submitted the blood draw to the Washington State Patrol Toxicology Laboratory for analysis.

On June 29, the department received Smith's timely submission of a request for a hearing.[2]

On November 26, 2018, Trooper Black received the blood test results, which were over the legal limit.  On November 29, Trooper Black completed a sworn report about Smith's arrest, refusal to submit to a breath test, and blood test result, and he submitted it to the department.  On November 30, Smith received a notice of suspension from the department, stating his personal driver's license would be suspended from January 31, 2019 until May 1, 2019, and his commercial driver's license would be permanently revoked as of January 31. The department also notified Smith it had scheduled a suspension/revocation hearing for January

---

[1] Smith Certified Appeal Board Record (CABR) at 4.

[2] Smith CABR at 15, 38-40.  When Smith was arrested, RCW 46.20.308(7) provided a motorist twenty rather than the current seven days to file a request for a hearing.  Former RCW 46.20.308(7) (2013).

15, 2019. Under the version of RCW 46.20.308(7) in effect in late 2018, the department had 60 days in which to hold a hearing.[3]

During his revocation hearing, Smith argued the department lacked the authority to suspend or revoke his licenses because more than 60 days passed between his request for a hearing and the hearing date, placing his hearing outside the timeline set by the implied consent statute. The hearing examiner concluded the hearing was timely because the department held it within 60 days of its receipt of Officer Black's sworn report. The hearing examiner sustained the department's decision.

In his RALJ appeal to King County Superior Court, Smith argued the revocation should be reversed because the hearing occurred more than 60 days from the department's receipt of his request for a hearing. The court agreed and reversed the revocation.

The department sought discretionary review, which was granted by Commissioner Jennifer Koh, pursuant to RAP 2.3(d)(3).

<u>Matthew Dyson</u>

On December 30, 2019, Trooper Briar Stanley stopped a car travelling 20 miles per hour above the speed limit on the highway. Dyson was driving. Despite denying having been drinking, he was slurring his words, smelled of alcohol, and had poor coordination. Trooper Stanley warned Dyson about the consequences of refusing a breath test. Dyson refused to submit to a breath test and was arrested

---

[3] Former RCW 46.20.308(7) (2013).

for DUI. He was processed by Trooper James Van Diest, who gave Dyson a hearing request form. Dyson timely requested a hearing on January 6, 2020.

For reasons unknown to either the department or Dyson, neither trooper submitted a sworn report to the department until March 3, 2020. On March 6, the department sent Dyson a notice of revocation. Three days later, it sent him notice of a March 23 hearing.

During the revocation hearing, Dyson argued the department's action should be dismissed because it failed to schedule his hearing within the timeline set by the implied consent statute. The hearing examiner concluded the department had authority to suspend Dyson's license because it obtained jurisdiction to hold the hearing when it received the sworn arrest report, which meant the hearing was timely held and because the 30-day hearing timeline in RCW 46.20.308(7) was directory rather than mandatory.

On Dyson's RALJ appeal to King County Superior Court, the court upheld the department's decision, explaining that the department did not have the authority to act until it received the officer's sworn report and that the timelines in RCW 46.20.308 were directory.

Dyson sought discretionary review, which was granted by Commissioner Koh under RAP 2.3(d)(3). Dyson's appeal was consolidated with the department's.

ANALYSIS

We review a license suspension or revocation decision from the same position as the superior court.[4] When, as here, the hearing examiners' findings of fact are unchallenged, we review their conclusions of law and the department's actions to determine whether an error of law occurred.[5]

The common issues between Smith's and Dyson's cases are ones of statutory interpretation. Both contend the department invalidly suspended and revoked their licenses under the implied consent statute because their hearings were held outside the timeline set by RCW 46.20.308(7) and because that timeline is mandatory. Thus, the primary issue is how to calculate the time for a hearing under the implied consent statute. If the department held hearings within the statutory timeline, then we need not decide whether the timeline is mandatory or directory.

We review issues of statutory interpretation de novo,[6] interpreting statutes to determine and effectuate the intent of the legislature.[7] We determine the intent

---

[4] Clement v. State Dep't of Licensing, 109 Wn. App. 371, 374, 35 P.3d 1171 (2001) (citing Walk v. Dep't of Licensing, 95 Wn. App. 653, 656, 976 P.2d 185 (1999)).

[5] Id.

[6] Medcalf v. State, Dep't of Licensing, 133 Wn.2d 290, 297, 944 P.2d 1014 (1997) (citing Clauson v. Dep't of Labor & Indus., 130 Wn.2d 580, 583, 925 P.2d 624 (1996); Wheeler v. Dep't of Licensing, 86 Wn. App. 83, 85, 936 P.2d 17 (1997)).

[7] Ctr. for Envtl. Law & Policy v. Dep't of Ecology, 196 Wn.2d 17, 29, 468 P.3d 1064 (2020) (citing Swinomish Indian Tribal Cmty. v. Dep't of Ecology, 178 Wn.2d 571, 581, 311 P.3d 6 (2013)).

of the legislature by beginning with the statute's plain language, reading the enactment as a whole, and harmonizing its provisions by reading them in context with related provisions.[8] When a statute is unambiguous, its plain language is taken as a statement of legislative intent.[9] A statute is unambiguous when its plain language is subject to only one reasonable interpretation.[10] An interpretation that yields an absurd result should be rejected because we presume the legislature does not intend such a result.[11]

RCW 46.20.308(7) sets timelines for hearings authorized by the implied consent statute. In most circumstances, such as when a person refuses a breath test, a "hearing shall be held within thirty days, excluding Saturdays, Sundays, and legal holidays, following the date of timely receipt of such request for a formal hearing before the department."[12] If an officer obtains blood test results and submits them to the department, then RCW 46.20.308(7) provides a "hearing shall be held within . . . thirty days, excluding Saturdays, Sundays, and legal holidays

---

[8] Segura v. Cabrera, 184 Wn.2d 587, 593, 362 P.3d 1278 (2015) (citing Quadrant Corp. v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd., 154 Wn.2d 224, 239-40, 110 P.3d 1132 (2005)).

[9] Tiger Oil Corp. v. Dep't of Licensing, State of Wash., 88 Wn. App. 925, 930, 946 P.2d 1235 (1997) (citing Waste Mgmt. of Seattle, Inc. v. Wash. Util. & Transp. Comm'n, 123 Wn.2d 621, 629, 869 P.2d 1034 (1994); In re Eaton, 110 Wn.2d 892, 898, 757 P.2d 961 (1988)).

[10] Spokane County v. Dep't of Fish & Wildlife, 192 Wn.2d 453, 458, 430 P.3d 655 (2018) (citing State v. Velasquez, 176 Wn.2d 333, 336, 292 P.3d 92 (2013)).

[11] Id. (quoting State v. Delgado, 148 Wn.2d 723, 733, 63 P.3d 792 (2003)).

[12] RCW 46.20.308(7).

following the date notice has been given in the event notice is given by the department following a blood test."

The premise of the motorists' argument is that the clock starts ticking on the hearing timeline once the department receives a hearing request. The motorists argue RCW 46.20.308(6), RCW 46.20.308(7), and procedural due process concerns compel this result. The department contends RCW 46.20.308(5), RCW 46.20.308(7), and RCW 46.20.329 must be read together and, when harmonized, do not require a hearing until it receives both a sworn arrest report and a timely request for hearing. Because the motorists' argument ignores the jurisdictional limits the legislature placed upon the department's ability to act on an individual license, it is unavailing.

The department's authority to suspend or revoke licenses "flow[s] from the police power of the state to regulate driving in the interest of public welfare and safety."[13] Administrative agencies, like the department, "have no inherent powers" and can "exercise only those powers conferred on them" by the legislature.[14] Thus, the agency must act within the scope of its jurisdiction as defined by the statute conferring authority upon it.[15]

[13] Fritts v. Dep't of Motor Vehicles, 6 Wn. App. 233, 240-41, 492 P.2d 558 (1971).

[14] In re Impoundment of Chevrolet Truck, WA License No.A00125A ex rel. Registered/Legal Owner, 148 Wn.2d 145, 156, 60 P.3d 53 (2002) (citing State ex rel. Pub. Util. Dist. No. 1 of Okanogan County v. Dep't of Pub. Serv., 21 Wn.2d 201, 208-09, 150 P.2d 709 (1944)).

[15] Id. at 156-57 (citing In re Elec. Lightwave, Inc., 123 Wn.2d 530, 540, 869 P.2d 1045 (1994); Wash. Indep. Telephone Ass'n v. Telecomm. Ratepayers Ass'n for Cost-Based & Equitable Rates, 75 Wn. App. 356, 363, 880 P.2d 50 (1994));

RCW 46.20.291 gives the department authority to suspend the license of any person who, among other acts, "committed an offense for which mandatory revocation or suspension of a license is provided by law." In the implied consent statute, RCW 46.20.308(6) requires that "upon receipt of a sworn report," the department "suspend, revoke, or deny the person's license, permit, or privilege to drive . . . effective beginning thirty days from the date of arrest or from the date notice has been given in the event notice is given by the department following a blood test."[16] When the department relies upon this authority to suspend or revoke a person's license, it undertakes, in general terms, an adjudication.[17] Part of that adjudication typically includes a hearing.[18]

---

see ZDI Gaming Inc. v. State ex rel. Wn. State Gambling Comm'n, 173 Wn.2d 608, 616, 268 P.3d 929 (2012) (jurisdiction is the power and authority to act) (citing Dougherty v. Dep't of Labor & Indus., 150 Wn.2d 310, 315, 76 P.3d 1183 (2003)).

[16] See Lewis v. State Dep't of Motor Vehicles, 81 Wn.2d 664, 665, 504 P.2d 298 (1972) ("Upon receipt of such a [sworn report], the department is obligated to revoke the driver's license.").

[17] See 1 CHARLES H. KOCH, JR., ADMINISTRATIVE LAW AND PRACTICE, § 2:11, at 70 (3rd ed. 2010) ("Adjudication is a determination of individual rights or duties. . . . In general[,] adjudication is the decision-making process for applying preexisting standards to individual circumstances. . . . These individualized facts are used to decide whether a given rule is applicable. Thus[,] the result of adjudication is the resolution of an individual controversy." (citations omitted)).

[18] See Martinez v. Dep't of Licensing, 70 Wn. App. 398, 401-02, 854 P.2d 43 (1993) (explaining the license revocation/suspension process can have three steps, and the second is a hearing).

Due process affords the opportunity for a hearing at which the State must prove the department's action complied with due process.[19] If a person wants to have a hearing, they can request one pursuant to RCW 46.20.308(7). To make a timely hearing request, a person must make a written request within seven days after receiving notice of their right to a hearing. A related statute, RCW 46.20.329, provides that "[a]ny decision by the department suspending or revoking a person's driving privilege shall be stayed and not take effect while a formal hearing is pending."

The motorists interpret RCW 46.20.329 as applying only after the department schedules a formal hearing. They argue that because RCW 46.20.308(6) mandates suspension or revocation within 30 days of the date of arrest and because RCW 46.20.329 applies only after a hearing is scheduled, their licenses were suspended before they had the opportunity for a hearing. Because this statutory interpretation assumes the legislature intended for the department to act without jurisdiction over a person's case, it is unconvincing.[20]

"A sworn officer's report is a jurisdictional prerequisite to [the department's] power to revoke a driver's license."[21] The legislature conditioned the department's

---

[19] Devine v. State, Dep't of Licensing, 126 Wn. App. 941, 951, 110 P.3d 237 (2005) (citing Bell v. Burson, 402 U.S. 535, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971); State v. Dolson, 138 Wn.2d 772, 777, 982 P.2d 100 (1999)).

[20] See Spokane County, 192 Wn.2d at 458 (courts presume the legislature does not intend absurd results) (citing Delgado, 148 Wn.2d at 733).

[21] Broom v. Dep't of Licensing, 72 Wn. App. 498, 502, 865 P.2d 28 (1994) (citing Waid v. Dep't of Licensing, 43 Wn. App. 32, 36, 714 P.2d 681 (1986); Metcalf v. Dep't of Motor Vehicles, 11 Wn. App. 819, 822, 525 P.2d 819 (1974)).

authority to adjudicate a license suspension upon the receipt of a "sworn report" containing the necessary information.[22]  Until the department receives a sworn report, the department lacks the authority and, as a practical matter, the facts, to evaluate a person's alleged violation of the informed consent statute.[23]

We harmonize RCW 46.20.308(6), RCW 46.20.308(7), and RCW 46.20.329 as providing for the hearing clock to start ticking when the department receives a timely hearing notice and obtains jurisdiction, while also protecting a person from an adverse action until the department holds a hearing.  If the department received a sworn report immediately following an arrest and later received a timely hearing request, then the clock would start ticking that day.  If the department received the timely hearing request first, then the clock would start ticking upon receipt of the sworn report.  Regardless, the department agrees that receipt of a timely hearing request stays its ability to act until after a hearing.[24]

The motorists argue RCW 46.20.308(7) required that the department hold a hearing within the 30 days (or 60 days as to Smith) after its receipt of a hearing request, regardless of whether it received a sworn report.[25]  The motorists

---

[22] Id. at 503; RCW 46.20.308(6).

[23] Broom, 72 Wn. App. at 502; see RCW 46.20.3101 (providing for differing license suspension durations depending upon their facts).

[24] RCW 46.20.329; see Divine, 126 Wn. App. at 952 ("The implied consent statute anticipates a hearing that occurs prerevocation, not postrevocation."); see also WAC 308-101-130(4) ("The department must stay a driver's license suspension any time a timely hearing request has been received but it is otherwise impracticable to hold the hearing within the time frame required by law.").

[25] The motorists cite to Soushek v. State Dep't of Licensing, 1 Wn. App. 2d 352, 405 P.3d 209 (2017), City of Seattle v. Bonifacio, 127 Wn.2d 482, 900 P.2d

advocate for their interpretation even when, as happened with Smith, a blood test analysis delays the transmission of the sworn report. But this interpretation of RCW 46.20.308(7) fails to harmonize it with the jurisdictional requirement in RCW 46.20.308(6) and would require a hearing even when the department lacked jurisdiction. Because the legislature would not require ultra vires hearings, the motorists' interpretation must be rejected.[26]

The department lacked the authority to adjudicate Smith's or Dyson's cases until it received the officers' sworn reports. Thus, the question is whether the motorists' suspension hearings were held within the statutory timeline set in RCW 46.20.308(7) as calculated from the day the department received a timely hearing request and obtained jurisdiction. RCW 46.20.308(7) requires that a

1105 (1995), and State v. Fulps, 141 Wn.2d 663, 9 P.3d 832 (2000), for support, but none are germane. In Soushek, the issue was the effective date of an amendment to RCW 46.61.504 and how it related to the implied consent statute. 1 Wn. App. 2d at 354. But whether an amendment to RCW 46.61.504 was retroactive is not germane to the department's authority to act. The legislature chose to limit the department's authority to act based upon its receipt of a sworn report and also authorized it to suspend a license retroactive to the date of arrest. These are not mutually exclusive, and Soushek is not apt. Bonifacio and Fulps provide even less support because both addressed calculating time for the criminal speedy trial rule. Fulps, 141 Wn.2d at 666 (identifying the issue as "[w]hether Fulps's speedy trial rights under CrR 3.3 were violated"); Bonifacio, 127 Wn.2d at 483 ("At issue in this appeal is whether the mere issuance of a citation starts the time for trial clock [under CrRLJ 3.3]."). The motorists do not explain how an analysis of calculating time under a criminal procedural rule controls the analysis of an agency's jurisdiction under a wholly civil statute. See Fritts, 6 Wn. App. at 241 ("The proceeding to review [a license] revocation is a civil administrative proceeding entirely separate and distinct from the criminal charge for which the driver was arrested.") (citing Connolly v. State, 79 Wn.2d 500, 487 P.2d 1050 (1971)).

[26] See Spokane County, 192 Wn.2d at 458 (statutes are not interpreted to produce absurd results).

hearing be held "within thirty days, excluding Saturdays, Sundays, and legal holidays," of the department's receipt of a timely hearing request.

Dyson was arrested on December 30, 2019. On January 6, 2020, the department received his timely hearing request. But the department did not receive the trooper's sworn report until March 3.[27] Because the department obtained jurisdiction on March 3 and already had Dyson's hearing request, it had until April 14—thirty days later, excluding Saturdays, Sundays, and legal holidays—to hold a hearing. Dyson's hearing was held on March 23. Because the department's hearing was timely, Dyson fails to show it erred by suspending his license.

Smith was arrested and had his blood drawn on June 15, 2018. RCW 46.20.308 sets a different hearing timeline for an arrest with a blood test.

After an officer arrests a motorist on suspicion of DUI, regardless of whether the motorist agrees to a breath test, the officer can obtain a warrant for a blood draw.[28] The officer is not required to transmit the sworn arrest report to the department until after receiving the blood test results.[29] If the blood test results show the motorist was over the legal limit, then RCW 46.20.308(5)(a)-(c) state that

---

[27] Whether the officer's failure complied with procedural due process is not before us. Despite several references to due process, Dyson does not genuinely argue his due process rights were infringed by this delay, as he fails to discuss the Mathews v. Eldridge, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), factors.

[28] RCW 46.20.308(4).

[29] RCW 46.20.308(5)(d); see State v. Frank, 94 Wn. App. 306, 312, 972 P.2d 491 (1999) (holding the time limit in RCW 46.20.308(5)(d) is directory).

the department must notify the motorist of the department's intention to suspend

his license, notify the motorist of his right to request a hearing and how to do so,

and notify the motorist that his license will be considered temporary beginning 30

days from the date of arrest.[30]  RCW 46.20.308(7) does not require the

department to schedule a hearing, even if timely requested, until after "the date

notice has been given [to the motorist] in the event notice is given by the

department following a blood test."  Thus, the hearing timeline does not begin until

after the motorist receives the department's notice of its intention to suspend his

license.[31]

Here, however, the situation became more complicated because Smith

refused a breath test before having his blood drawn.  Because he refused a breath

test when arrested, Smith received the notice from Trooper Black about his right to

---

[30] We share some of the motorists' concerns about the risk of confusing or misleading people about their license status.  When a person refuses a breath test, an officer, acting on the department's behalf, must provide notice of the department's intent to suspend their license and notice "that the license or permit, if any, is a temporary license that is valid for thirty days from the date of arrest." RCW 46.20.308(5)(a), (c).  For Smith, who was subject to a 60-day hearing deadline, the hearing request form stated his license "is only valid for 60 days from the date of this arrest," and the department "intends to" suspend and revoke his licenses.  Smith CABR at 194.  The hearing request form for Dyson, who was subject to a 30-day hearing deadline, was nearly identical.  The forms provided a phone number to call to check license status.  They did not state the suspension or revocation would be stayed pending a hearing or refer to RCW 46.20.329.  But because the phrasing of the standard request for DUI hearing form is not squarely before us and is not fully briefed, it presents a policy question we decline to entertain.

[31] WAC 308-101-030 specifies when a motorist is deemed to have received notice.

14

a hearing, and, within 20 days, made a timely hearing request.[32]  From this, Smith contends his refusal and hearing request began the clock ticking because they are distinct from the blood draw timeline.

Smith is mistaken.  As discussed, the department obtains jurisdiction over a particular case when it receives an officer's sworn report, and RCW 46.20.308(5)(d) does not require a law enforcement officer to transmit their sworn report until after receiving the blood test results.[33]  Thus, the department lacked the authority to adjudicate Smith's case until it received Trooper Black's sworn report on November 29, 2018.[34]  The question is whether the department held Smith's hearing within the timeline set by RCW 46.20.308(7), which, at the time, was 60 days from the date Smith received the department's notice.

Smith's blood was drawn on June 15, 2018, and sent off for analysis.  The report was completed on November 16, 2018, and Trooper Black received the results on November 26.  Trooper Black transmitted his sworn report to the department on the 29th, and it obtained jurisdiction over Smith's case that day.  On November 30, Smith received notice from the department of its intent to suspend his license.  Because Smith had already requested a hearing, the

---

[32] The time to file the request for hearing was reduced to seven days effective January 1, 2019.

[33] The statute directing that the officer "immediately" provide the sworn report "within 72 hours" is directory and not mandatory.  Frank, 94 Wn. App. at 312.

[34] Broom, 72 Wn. App. at 502 (citing Waid, 43 Wn. App. at 36; Metcalf, 11 Wn. App. at 822).

department scheduled one for January 15, 2019. Smith's hearing was held that day. Smith's hearing was timely held less than 60 days from November 30, 2018, so the department did not err by suspending Smith's personal driver's license and revoking his commercial driver's license.

Pursuant to the implied consent statute, the department held timely hearings to adjudicate Smith's and Dyson's cases once it obtained jurisdiction. Because the hearings were within the statutory timelines, we do not reach the question of whether those timelines are mandatory or directory.

Therefore, we reverse the RALJ court as to Smith and affirm as to Dyson.

_____

WE CONCUR:

_____          Andrus, A.C.J.

16